567 F.Supp. 978 (1983)
Mary Dell BURROWS, Plaintiff,
v.
CHEMED CORPORATION, d/b/a Vestal Laboratories, Defendant.
No. 81-560C(1).
United States District Court, E.D. Missouri, E.D.
June 30, 1983.
*979 *980 Melba I. Parente, Clayton, Mo., for plaintiff.
Diane T. Davidson, John R. Truman, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
Plaintiff Mary Dell Burrows brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. She alleges that the discriminatory actions of the defendant denied her the opportunity for equal pay increases, promotions, and training. In addition, the plaintiff asserts that the defendant retaliated against her for engaging in practices protected by the Act. Therefore, the plaintiff contends that she is entitled to relief under the statute because the actions of the defendant are in violation of the provisions of Title VII which prohibit sex discrimination and which guarantee employees the right to oppose unlawful employment practices.
This case was tried to the Court sitting without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure.

FINDINGS OF FACT
1. Plaintiff, Mary Dell Burrows, is a white female and a resident of the State of Missouri.
2. Defendant, Chemed Corporation, is a Delaware Corporation doing business in Missouri as Vestal Laboratories. The defendant is engaged in an industry affecting commerce. The corporation is an employer within the meaning of 42 U.S.C. § 2000e(b).
*981 3. Vestal Chemical Company was founded by Frank J. Pollnow in 1913. The company originally was engaged in the manufacture of liquid soap. In the 1920's Vestal expanded its product line to include other sanitary chemical specialties. In 1930 Vestal moved to its current location and in 1971 Vestal became a division of Chemed Corporation. Presently, Vestal produces the following types of specialty chemicals: one, surface and air disinfectants and germicidal detergents; two, germicides and cleaners for medical instruments, skin care, and professional products; three, maintenance and floor care products such as surface cleaners and waxes; and four, water treatment chemicals, such as a cooling tower additive which kills the bacteria which cause Legionnaires disease. Vestal's products are used for environmental sanitation both in industries and in institutions.
4. Plaintiff filed charges of employment discrimination with the Equal Employment Opportunity Commission ("E.E.O.C.") within one hundred eighty days of the denial of her promotion to the position of Manager, Quality Control, in the Technical Department of Vestal Labs. Plaintiff brought this lawsuit within ninety days of receipt of her Right-to-Sue Letter from the E.E.O.C.
5. Mary Burrows was hired by Vestal in November of 1959 as a chemist in the Quality Control Department. When the plaintiff applied, she held an A.B. Degree in Chemistry from Lindenwood College in St. Louis. Prior to her employment by Vestal, Burrows had worked as a chemist for James Varley & Sons, which also engaged in the manufacture of chemicals.
6. In June of 1979, the plaintiff held the title of unit head of quality control. She held this position for approximately twenty years. The title authorized the plaintiff to manage the quality control department and train and supervise the lab technicians. Mrs. Burrows' performance had been satisfactory at all times. A number of her fellow employees testified that the plaintiff had excellent management skills.
7. During the plaintiff's employment, Vestal considered the quality control department to be part of the technical department, which was headed by Norman Dewar, after the death of James C. Wiedow. Mrs. Burrows reported directly to Dr. Dewar. In 1977 Vestal enacted a procedure whereby written "performance appraisals" of employees were required. In June of 1977 and 1978, Dr. Dewar rated the plaintiff's performance as satisfactory. As a result of her performance on the job, on July 1, 1979, Mary Burrows was given a merit increase in pay and a cost of living increase.
8. On July 6, 1979, Dr. Dewar informed the plaintiff that he planned to promote Dan Stueck to the position of manager of quality control rather than Mrs. Burrows. Dr. Dewar testified that this decision was due to the planned reorganization of the technical department whereby he intended to combine the functions of analytical testing with routine quality testing in one management position. Dr. Dewar stated at trial that his goal was to increase the efficiency of the department by decreasing the numbers of managers who reported directly to him. Dr. Dewar further commented that Dan Stueck was better suited for this position because he had experience in the area of product development, which the plaintiff lacked. Two other departments were also combined during this reorganization process. Dr. Dewar claimed that the plaintiff was not capable of heading the reorganized quality control department because she had not had the necessary experience in the areas of product development and analytical chemistry. As a result of this decision to promote Mr. Stueck to the position of manager of quality control, Mrs. Burrows' former position was eliminated and she assumed the position of control chemist.
9. It is evident from the evidence adduced at trial that Vestal Labs did not have a standardized written promotion policy prior to July of 1979. It was the general policy of the company to promote from within. Promotional decisions in the Technical *982 Department were made by Dr. Dewar and subsequently approved by Paul Voet, President of the company. In addition, the company did not have a formal performance review procedure. Dr. Dewar personally reviewed the performance of all unit heads in the technical department. Therefore, the decision to promote Dan Stueck over Mrs. Burrows to the position of manager of quality control was not a result of a policy of the defendant company; instead, the decision was completely left to the discretion of Dr. Dewar. Mrs. Burrows and Daniel Stueck were the only two persons considered for this position.
10. Vestal Labs hired Daniel Stueck on October 3, 1966, as a lab technician under James Wiedow in product development. When Steuck began his tenure with the defendant, he had attended the University of Kansas for one year. There was a period of time after Stueck initially joined the company that he worked under the supervision of Mrs. Burrows.
11. In 1967, Stueck entered the military and was on leave until March of 1969, at which time he returned to his former position and began to attend the University of Missouri in St. Louis, with the assistance of the company. Stueck received his B.S. Degree in Chemistry in 1974.
12. In July of 1974, Stueck was promoted to the position of product development chemist in the Research and Development Department. In 1976 he became an analytical chemist. During this period of time, Stueck reported to James Wiedow, who rated Stueck's work highly.
13. In July of 1977, Stueck was reassigned to the Quality Control Department as analytical chemist and reported directly to Dr. Dewar. When Mr. Wiedow died in March of 1978, Dr. Dewar appointed Stueck as acting director of quality assurance. He also retained his position as an analytical chemist.
14. When Dr. Dewar made his decision to promote Stueck to the position of manager of quality control, rather than Mrs. Burrows, it is clear that the plaintiff was equally qualified to hold this position. Stueck and the plaintiff had been engaged in substantially the same types of work and duties throughout their tenure at the company and the plaintiff had been at Vestal a significantly greater number of years. However, it is clear from the manner in which the witnesses testified at trial that there were personality clashes between the plaintiff and Dr. Dewar, which leads this court to believe that the failure to promote the plaintiff was not based completely on merit. Another significant factor in the decision to promote Stueck over Mrs. Burrows was the age of the respective employees. There was testimony establishing that the defendant was aware that due to plaintiff's age, she would have had great difficulties locating a comparable position in another company. In contrast, Stueck had begun his career with Vestal, as a young man, and was likely to remain there for a significant number of years.
15. The majority of the testimony at trial relating to the question of whether Dr. Dewar discriminated against women was the statement by two of plaintiff's witnesses that Dr. Dewar did not like to hire married women with children because he was concerned about potential babysitting problems. Mrs. Burrows had worked at Vestal for over twenty years and had a job with a significant degree of responsibility that she performed in a satisfactory manner. For a large amount of the time that the plaintiff worked at Vestal, she reported directly to Dr. Dewar. In fact, Dr. Dewar gave her a merit increase and pronounced her work satisfactory, at the same time that he denied Mrs. Burrows this promotion. Furthermore, she did not have any young children at home. More importantly, Mr. Jackel, who testified that Dr. Dewar did not like to hire married women, admitted that the Doctor had never discussed the employment of women in his presence, or made direct comments about women, their work, or the work of Mrs. Burrows. On the basis *983 of the record, it must be concluded that the plaintiff failed to demonstrate by a preponderance of the evidence that Mrs. Burrows' sex was a factor in Dr. Dewar's failure to promote the plaintiff to the position of manager of quality control. There was evidence that Dr. Dewar has rated some women highly and promoted them to managerial positions.
16. Coincident with Stueck's promotion, Vestal began a company-wide assignment of grades to various positions. Mrs. Burrows assumed the position of quality control chemist, which was assigned a grade of 13. Although the defendant abolished the position of unit head of quality control, it was assigned a grade 14. As a result, Mrs. Burrows received a performance review and salary increase based on her prior year's performance. Therefore, the plaintiff did not suffer a reduction in pay as a result of the reorganization of the company. In November of 1979, the plaintiff assumed the position of lead control chemist, which allowed her again to be ranked as a grade 14.
17. After being told by Dr. Dewar that in order to qualify for advancement she would need experience as a product developmental chemist in the research and development department, the plaintiff voluntarily applied for and accepted a transfer in January of 1981. At the time that Mrs. Burrows applied for this position, she knew that the job was assigned a grade 13. The plaintiff voluntarily chose to take this position so that she might advance in the company. Therefore, the reduction in grade and salary cannot be considered a demotion.
18. The plaintiff filed a charge of employment discrimination against the defendant with the E.E.O.C. on October 11, 1979. After filing these charges, two meetings took place in Mr. Voet's office. At these meetings, the plaintiff was questioned about the filing of these charges. However, the activities of the officials of the company did not constitute harassment. Furthermore, the changes in job assignments, which took place after the filing of the charge of discrimination with the E.E. O.C. were not a product of harassment or retaliation. The plaintiff voluntarily chose to transfer to the research and development department and any previous reductions in grade were a result of the reorganization of the company.
19. As of December 31, 1977, Vestal Labs employed a total of 456 employees nationwide according to an EEO-1 report. Seventy-six of the employees are females and 38 are males. Ninety-one men hold managerial positions and ten females hold comparable positions.

CONCLUSIONS OF LAW
This Court has jurisdiction of this case pursuant to 42 U.S.C. § 2000e et seq. Plaintiff claims that she was denied a promotion on the basis of her sex while employed at Vestal Laboratories. She further argues that in retaliation for the filing of a claim of discrimination with the E.E.O.C., the defendant subjected her to demotions and harassment in violation of Title VII.
In a Title VII cause of action, the plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. If the plaintiff is successful, the defendant must then articulate a legitimate non-discriminatory reason for its actions. In order to sustain this burden, the defendant only need present evidence which raises a genuine issue of fact as to whether it discriminated against the plaintiff. The burden of producing evidence then shifts back to the plaintiff, who must show by a preponderance of the evidence, that the defendant's explanation was merely a pretext for discrimination within the meaning of the statute. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Coleman v. Missouri Pacific Railroad Company, 622 F.2d 408 (8th Cir.1980); Kirby v. Colony Furniture Company, *984 Inc., 613 F.2d 696 (8th Cir.1980); Meyers v. I.T.T. Diversified Credit Corporation, 527 F.Supp. 1064 (E.D.Mo.1981). Once the defendant responds to the plaintiff's proof by offering evidence of the reason for its actions, the presumption "drops from the case" and the court must then determine whether there was discrimination within the meaning of Title VII. United States Postal Service Board of Governors v. Aikens, ___ U.S. ___, ___, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). The ultimate "`factual inquiry' in a Title VII case is `whether the defendant intentionally discriminated against the plaintiff'." United States Postal Service Board of Governors v. Aikens, ___ U.S. at ___, 103 S.Ct. at 1482 citing Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The plaintiff always retains the burden of persuasion with respect to this ultimate factual issue. The division of intermediate evidentiary burdens serves merely to allow the court to evaluate more easily the evidence as it bears on the critical issue of discrimination. Id.
The elements of a prima facie case in a Title VII cause of action vary according to the particular claim that a plaintiff asserts. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973). The Eighth Circuit has held that a prima facie case of disparate treatment requires a plaintiff to show that: one, the plaintiff is a member of a protected class; two, that the plaintiff applied for and was qualified for the position in question; three, the plaintiff was not hired; four, that the position remained open and others of similar qualifications were sought. Wells v. Gotfredson Motor Co., Inc., 709 F.2d 493 (8th Cir.1983); Royal v. Missouri Highway and Transportation, 655 F.2d 159 (8th Cir.1981). As stated, the McDonnell Douglas criteria will not be applicable in every situation. Under facts similar to the present case, courts have held that the plaintiff may establish a prima facie case for discriminatory promotion by showing that the position was filled by someone with similar qualifications. Mortensen v. Callaway, 672 F.2d 822, 823 (10th Cir.1982). Furthermore, the fact that the plaintiff did not formally apply for the promotion does not preclude her from establishing a prima facie case. Royal v. Missouri Highway and Transportation, 655 F.2d at 163 n. 5 (8th Cir.1981).
In this instance, the plaintiff has established successfully an inference of discriminatory intent by providing this Court with evidence of the different elements of the prima facie case of discriminatory promotion. First, it is clear that the plaintiff is female and therefore a member of a protected class within the meaning of the statute. Second, even though the plaintiff failed to apply formally for the position of manager of quality control, it was established at trial that she was considered for the job by the defendant. See Findings of Fact Nos. 7, 8. Vestal did not have a formal promotion policy at the time this position was created. Furthermore, not only did the defendant fail to promote Mrs. Burrows to this position, but it effectively eradicated the plaintiff's previous job by promoting Daniel Stueck.[1] See Finding of Fact No. 7. Therefore, it necessarily follows *985 that Mrs. Burrows' inability to formally apply for this job, as a result of company procedures, should not affect her ability to establish a prima facie case. Third, there is no dispute that the plaintiff was not hired for the position of manager of quality control. Finally, the position of manager of quality control was filled by Daniel Stueck who had similar qualifications to the plaintiff. See Findings of Fact Nos. 9-13.
In response to the plaintiff's claim of disparate treatment with respect to the question of promotion, the defendant articulated a non-discriminatory reason for its decision to promote Daniel Stueck rather than Mrs. Burrows. Dr. Dewar testified at trial that the reorganization of the company required him to combine the functions of analytical testing with routine quality testing in one management position. The Doctor further testified that the plaintiff was not capable of heading the reorganized quality control department because she did not have the necessary experience in the areas of product development and analytical chemistry. See Finding of Fact No. 7. The submission of this evidence clearly raised a genuine issue of fact and therefore sustained the defendant's intermediate burden under the test enunciated by the Supreme Court in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the defendant satisfied this burden, the presumption of disparate treatment dropped from the case and the burden then shifted to the plaintiff to demonstrate that the defendant intentionally discriminated against her on the basis of sex by failing to promote her to the position of manager of quality control. However, the plaintiff failed to sustain this burden because she could not prove by a preponderance of the evidence that the defendant's failure to promote her was as a result of her sex.
If a plaintiff's theory of recovery rests upon disparate treatment, it is essential that there be proof of discriminatory motive. Johnson v. Bunny Bread Co., 646 F.2d 1250 (8th Cir.1980); Royal v. Missouri Highway and Transportation Commission, 655 F.2d 159 (8th Cir.1981). Although it is the belief of this court that the decision to promote Daniel Stueck over Mrs. Burrows was not based upon merit completely, see Finding of Fact No. 13, the evidence does not lead to the conclusion that Dr. Dewar denied the plaintiff this promotion as a result of her sex. See Findings of Fact Nos. 13, 14. Title VII liability may not be imposed if employees are denied opportunities because of personality clashes, see Mortensen v. Callaway, 672 F.2d 822 (10th Cir. 1982), or because of the age of the employee. The plaintiff failed to bring this action on a theory of age discrimination. Furthermore, in the absence of additional evidence of discriminatory intent, the use of subjective criteria in employment decisions does not alone make out a pattern or practice of discrimination. Eubanks v. Pickens-Bond Construction Co., 635 F.2d 1341, 1347 (8th Cir.1980). In fact, employers are more likely to use subjective criteria when they are attempting to fill managerial positions. Royal v. Missouri Highway and Transportation Commission, 655 F.2d 159, 164 (8th Cir.1981). In light of the fact that the plaintiff failed to prove by a preponderance of the evidence that the defendant was motivated by a sexual animus in denying her the promotion to the position of manager of quality control, judgment will be entered in favor of the defendant with respect to her claims of discriminatory promotion and demotion.[2]
*986 In addition to claiming that the defendant denied her a promotion on the basis of her sex, the plaintiff also sought to prove at trial that the defendant retaliated against her for the filing of a charge of discrimination with the E.E.O.C. The plaintiff alleged that she was subjected to demotions and harassment as a result of her participating in an activity protected by Title VII.
The Eighth Circuit has held that the order and allocation of proof in Title VII suits should be applied to cases based upon a theory of retaliation for participation in activities protected by the statute. Womack v. Munson, 619 F.2d 1292, 1296 (8th Cir.1980). Section 704(a) requires a plaintiff to show: one, a statutorily protected participation; two, adverse employment action; and three, a causal connection between the first two elements. Id.; Reilly v. Califano, 537 F.Supp. 349, 354 (N.D.Ill. 1981). Under this rule, once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate or legitimate, nondiscriminatory reason for its action. In order to sustain this burden, the defendant does not have to prove absence of retaliatory motive. Instead the defendant must produce evidence which will dispel the inference of retaliation by establishing the existence of a legitimate reason. Womack v. Munson, 619 F.2d at 1296. The Burden then shifts to the plaintiff to demonstrate that the proffered justification is merely a pretext. Finally, in a case based upon a theory of retaliation, it is unnecessary for a plaintiff to prove that the underlying claim of discrimination is true. Novotny v. Great American Federal Savings & Loan Assn., 539 F.Supp. 437 (W.D. Penn.1982).
Applying the above principles to the facts of this case it must be concluded that the plaintiff made out a prima facie case of retaliatory demotion by showing: one, she filed a charge of discrimination with the E.E.O.C. on October 11, 1979, see Finding of Fact No. 17; two, the defendant was aware of the lawsuit, see Finding of Fact No. 17; three, the plaintiff subsequently was transferred and lowered in grade and salary, see Finding of Fact No. 16; and four, the transfer followed the protected activity so as to justify an inference of retaliatory motive. Womack v. Munson, 619 F.2d at 1296 n. 6.
In response to the plaintiff's claim of retaliatory transfer, the defendant offered a legitimate reason for the plaintiff's transfer at trial. The defendant produced evidence establishing that Mrs. Burrows volunteered for a position as a developmental chemist in the research and development department after Dr. Dewar informed her that experience in that area would allow her to advance in the company. Furthermore, there was testimony which showed that the plaintiff was fully apprised of the fact that the position had a lower grade and salary. See Finding of Fact No. 16. The plaintiff was unable to prove by a preponderance of the evidence that the defendant's proffered justification was merely a pretext for retaliation. In fact, Mrs. Burrows never disputed that she applied for the job or that she was aware that the job held a lower grade and salary. See Finding of Fact No. 16. Therefore, judgment will be entered for the defendant on the plaintiff's claim of retaliatory transfer.
The plaintiff's final claim is that the defendant harassed her as a result of *987 her filing a claim with the E.E.O.C. The only evidence submitted by the plaintiff on this issue concerned two meetings in Mr. Voet's office in which the plaintiff was questioned about these activities. It is the conclusion of this court that the plaintiff failed to establish a prima facie case of retaliation with respect to this claim. Although Mrs. Burrows successfully established that she participated in a statutorily protected activity by filing a complaint of discrimination, the plaintiff was unable to show that she suffered any adverse employment action. It is a factual finding of this court that the plaintiff was not harassed during these meetings. See Finding of Fact No. 17.
Accordingly, judgment will be entered for the defendant.
NOTES
[1] Not only does the plaintiff claim that the defendant failed to promote her on account of her sex, she also claims that she was demoted as a result of the discriminatory actions of the defendant. It is the conclusion of this court that the same factors which motivated the defendant not to promote Mrs. Burrows to the position of manager of quality control caused the defendant to assign her the position of quality control chemist. See Finding of Fact No. 13. It is a factual finding of this court that even though the plaintiff was assigned a lower grade, for a short period of time, her performance review and salary increase were based upon her previous grade. In addition, within a four month period the plaintiff was promoted and restored to her previous grade. See Finding of Fact No. 15. Therefore, the plaintiff's initial reassignment will not be considered a demotion that needs to be addressed separately by this court. The plaintiff's transfer to the research and development department will be discussed in the context of the plaintiff's retaliation claim.
[2] The plaintiff introduced into evidence a substantial number of general statistics in an attempt to prove that the defendant discriminated against her on the basis of sex. The Eighth Circuit has held:

Although statistical evidence of a pattern or practice of discrimination is of probative value in an individual discrimination case for the purpose of showing motive, intent, or purpose, cf. Marquez v. Omaha District Sales Office, Ford Division of Ford Motor Co., 8 Cr. 1971, 440 F.2d 1157, it is not determinative of an employer's reason for the action taken against the individual grievant.
King v. Yellow Freight System, 523 F.2d 879, 883 (8th Cir.1975) (citing Terrell v. Feldstein Co., 468 F.2d 910, 911 (5th Cir.1972). See also, Johnson v. Bunny Bread Co., 646 F.2d 1250, 1255 (8th Cir.1980) (demographic statistics are helpful in establishing a pattern or practice of discrimination; however, without additional evidence the connection between the statistics and employer's acts are too attenuated to compel a finding of discriminatory motive). It is the belief of this court that the plaintiff ultimately failed to make out a case because she failed to prove by a preponderance of the evidence that the defendant was motivated by a discriminatory intent.