779 F.Supp. 1009 (1991)
Lawrence SAUNDERS, Plaintiff,
v.
SOUTHLAND CORPORATION, Defendant.
No. 88-2031 C (5).
United States District Court, E.D. Missouri, E.D.
December 30, 1991.
*1010 Raymond Howard, Bernard F. Edwards, Jr., St. Louis, Mo., for plaintiff.
Kenneth W. Bean, Eric M. Trelz, Sandberg, Phoenix & von Gontard, St. Louis, Mo., for defendant.

MEMORANDUM AND OPINION
LIMBAUGH, District Judge.
Plaintiff Lawrence Saunders filed this action against his former employer, The Southland Corporation ("Southland"), pursuant to Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et seq. Southland owns and operates 7-11 convenience stores. Plaintiff claimed that Southland failed to give him certain job assignments at the stores because of his race and prior equal employment opportunity activity. Southland asserted plaintiff was denied the positions because of his poor job performance. The case was tried before this Court sitting without a jury on June 16 and 17, 1991.[1] *1011 This Court, having now considered the pleadings, the testimony of the witnesses, the deposition testimony, the documents in evidence and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52.

FINDINGS OF FACT
Plaintiff Lawrence E. Saunders is a citizen of the United States of America and a resident of the State of Missouri. Defendant Southland Corporation ("Southland") is a corporation that owns and operates convenience stores doing business as 7-11 stores.
Plaintiff, a black male, was employed by Southland from August 21, 1985 to December 20, 1988. Prior to being hired by Southland, plaintiff had three years of college education. After college, he had worked three years as a police officer, then operated his own convenience food store for seven years.
Ray Griffin, a Southland supervisor, hired plaintiff as a certified store management trainee for a 7-11 convenience store on August 21, 1985. Griffin, a black male, supervised a group of eight 7-11 stores owned and operated by Southland. The stores had three levels of managers: assistant store managers, regular store managers and certified store managers. Southland had three types of stores: low-volume stores with gross monthly sales volumes of below $50,000; medium-volume stores with $50,000 to $70,000; and a high-volume store with more than $70,000. The volume was calculated from the store's merchandise sales. The stores sold petroleum products, but gas was not included in the volume total. Generally, a regular or certified manager earned a base pay of about $15,000 plus a bonus depending on the store's sales volume. A manager would receive a larger bonus from a higher volume store. Assistant managers earned an hourly wage.
Griffin assigned plaintiff to Store No. 20204 located at 601 First Capitol, St. Charles, Missouri, for training. The store manager was Sandy Branon, a white female. Branon reported to Griffin and conducted the initial training of plaintiff. Branon gave plaintiff a 4+ out of 5 performance rating, based primarily on his ability to complete the required paper work. During this training, however, Branon developed doubts about whether plaintiff would be a successful store manager because he lacked motivation for the completion of assigned tasks, which led to resentment by other store employees. Branon reported her concerns to Griffin and suggested that plaintiff be reassigned for training because she believed she was unable to motivate plaintiff. She told him she believed plaintiff would not make a good manager because of his lack of motivation.
Griffin reassigned plaintiff to Store No. 19419 under Dany Brunny for the completion of his training. The training included topics such as personnel, sanitation and store procedures. Generally, most trainees complete training in about three months, but plaintiff took five months to complete his training.
On February 1, 1986, plaintiff completed the training program and Griffin placed him as a store manager in Store No. 19506. Plaintiff signed a letter showing there was mutual agreement between Southland and him regarding this position. Griffin was plaintiff's direct supervisor at Store No. 19506. The store was one of the lowest volume stores in the district and had sales of less than $40,000 when plaintiff started there.
When a store manager position became available, Southland would make a job posting. Plaintiff testified that he applied for, but was denied, transfer to a manager's position at a higher volume store on five occasions: January 1986; April 1986; September 1986; November or December 1986; and June 1987.
*1012 Plaintiff made the first request while he was still in training. In late January 1986, a job posting was made for a store manager for Store No. 20205 in St. Charles, Missouri. It was a medium-volume store and plaintiff had trained there, so he thought he might get the position. Griffin did not place plaintiff in Store No. 20205 because he remembered that plaintiff had developed employee relations problems during his training there and Griffin did not believe it was fair to place plaintiff there for that reason.
Plaintiff put forth no evidence as to the identity, race or qualifications of the person who received the job except that it was a male. After about two or three months, that person was fired, and there was another job posting.
In April 1986, plaintiff applied for the job at Store No. 20205 again. Sophia Griffin, a white female, received the job on May 1, 1986. She was in training and was assistant manager at Store No. 20205 at the time, while plaintiff by then had been a store manager for a few months. Ray Griffin made the decision to award the job to Sophia Griffin because she was the best qualified person.[2] Although Ray Griffin had no record that plaintiff applied for that position, he testified that Sophia Griffin was more qualified than plaintiff to run a high-volume store.
Ray Griffin was Saunders' supervisor from February 1986 to October 1986. As his supervisor, Griffin performed his monthly evaluations. Plaintiff's first month's performance rating was a 3+ on a 1-to-5 scale, which was slightly above average. He received an overall rating of "unsuccessful" for the month of February. Plaintiff began to develop the store into a better producing store. The store had poor accessibility before plaintiff began to manage it and Southland had considered closing it.
The next three months were rated successful, and on June 1, 1986, plaintiff became a certified store manager. In August 1986, Griffin gave plaintiff two written reprimands: one for an improper employee termination by plaintiff and one for inaccuracy of his written reporting.
Plaintiff continued as the certified store manager at St. Peters through 1986 and part of 1987. Each month, the store would receive a performance rating comparing that month to the same month the previous year. During plaintiff's tenure as manager, sales volume increased substantially with increases of 12 to 33 percent each month over the previous year.
Plaintiff testified he made his third application for a higher volume sales store in September 1986. Robert Hartmann, a white male, received the job. Hartmann was in management training at that time, while plaintiff was already a manager. Jim Gallagher, a white male, was the supervisor who hired Hartmann. He had no record or recollection that plaintiff ever applied for the job. Gallagher had trained Hartmann and Hartmann knew his system, so Gallagher believed he was qualified for the job. Gallagher liked to promote from within his own store.
On October 6, 1986, plaintiff filed his first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was not transferred to a higher volume store because of his race. He also made these complaints in person to his supervisor, Ray Griffin, and to the district manager, Karen Hoffman. Griffin told him that as supervisor he had little input into who receives the jobs for high level stores. Hoffman told him she was on pregnancy leave at the time he applied for these jobs and had no input into these decisions.
In November 1986, Jim Corbin was plaintiff's supervisor. Plaintiff claimed that Corbin told him that if he did not withdraw his EEOC complaint, he would lose his job. Plaintiff said, however, that Corbin did not make that statement until June 1987 and Corbin was no longer his supervisor at that time. Plaintiff was never fired.
Corbin was plaintiff's supervisor through March 1987. In November 1986, Corbin gave plaintiff an unsatisfactory rating for *1013 loss of inventory. Plaintiff alleged the rating was improper because it was made when he was not present. He asserted that the unsatisfactory rating was in retaliation because it was in the first month following his EEOC filing. In December 1986, Corbin gave plaintiff another unsatisfactory rating on the basis of merchandise shortages. In January 1987, plaintiff had an overall satisfactory rating, but still had an unsatisfactory rating in the merchandise shortage category. In February he had an overall satisfactory rating, although he had an unsatisfactory rating in inventory control. In March 1987, plaintiff had an overall satisfactory rating, but an unsatisfactory rating in merchandise shortage. Plaintiff also received a six-month evaluation from Griffin, who rated his performance overall as satisfactory.
In April 1987, Judy Lepping became plaintiff's supervisor. She rated him unsatisfactory for April 1987, May 1987 and August 1987. She rated him as satisfactory in June and July 1987.
On June 15, 1987, plaintiff filed a second EEOC complaint claiming he received unsatisfactory ratings in retaliation for his October 1986 EEOC complaint.
Plaintiff testified that he applied for a fourth high-volume store in May 1987. He stated he applied for a certified manager position at a high-volume store at 11930 Olive Street. Plaintiff put forth no evidence regarding when he applied or who received the job.
Plaintiff testified he made his fifth application in response to a job posting on June 12, 1987 for a high-volume store. Annette Kopp, a white female, received the job. Kopp was a manager-trainee at that time. Plaintiff never asked anyone why he did not get that job and plaintiff knew nothing about Kopp's credentials.
Ken Allen, a white male, supervised plaintiff from October 1987 to December 1988. Allen transferred plaintiff to Store No. 26923 in St. Peters as a manager. It was a higher volume store than plaintiff's previous store. Allen testified that plaintiff agreed to the transfer, but plaintiff disputed that. The store was a trial, jointventure with a Hardee's restaurant in the same store and had been losing money. The store had a sophisticated computer system that plaintiff was not trained to use. Even after the system was converted to a simpler system, plaintiff had problems at the new store. Plaintiff claimed the new computer system proved highly inaccurate and caused merchandise shortages, but Allen disputed that. Allen sent plaintiff a series of deficiencies on April 15, 1988. He sent plaintiff another performance notice on July 5, 1988 when plaintiff failed to attend a manager's meeting. On July 8, 1988 Allen sent plaintiff another notice involving shortages. On July 18, 1988, he sent plaintiff yet another notice involving shortages. Plaintiff had more than $4,000 in unexplained shortages.
On July 19, 1988, Allen assigned plaintiff to Store No. 26654 and demoted him to assistant store manager, which was the entry-level position. As an assistant manager, plaintiff worked only 34 to 37 hours a week at a wage of about $6 per hour. As an assistant manager, he was not eligible for a bonus. After the demotion, plaintiff filed a third EEOC complaint on September 9, 1988 on the basis of retaliation.
After the demotion, plaintiff received a 5 rating as an assistant manager. Allen testified that he believed that assistant manager was the appropriate position for plaintiff all along. Allen had demoted managers who are white with shortages of less than $4,000.
Each of plaintiff's supervisors testified that his or her actions were not motivated by plaintiff's race or EEOC complaints. With the exception of Branon, none knew of the complaints until plaintiff filed this lawsuit. Branon knew of the complaints because plaintiff had told her some time after he had completed his training and was the manager of his own store.
On December 20, 1988, plaintiff resigned. He believed that Southland was unfair and he had no future with the company. He sought other employment. In January he went to work for an automobile agency as a probationary sales employee. In April 1989 he went to work full time with Jim *1014 Lynch Cadillac as a car salesman. He held that job at the time of trial. In the first six to eight months in 1990, plaintiff made more money than he ever did in a year with Southland. Plaintiff stated nonetheless that had he been promoted to a higher volume store he might have made more with Southland than with Jim Lynch Cadillac.

CONCLUSIONS OF LAW
Plaintiff has satisfied all the necessary procedural requirements and this Court has jurisdiction over this matter under 42 U.S.C. § 2000e et seq. ("Title VII"). Venue in this case is proper in the Eastern District as the acts complained of occurred and plaintiff resides in this district. In this case, plaintiff alleges that he was denied certain jobs with Southland and demoted because of discrimination based upon his race and prior activities protected by Title VII.

Race Discrimination
When race discrimination is alleged, the Court must apply the three-part test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The plaintiff must first prove a prima facie case of discrimination by a preponderance of the evidence. Id. Plaintiff may establish a prima facie case by showing that (1) he was a member of a protected class; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) other employees with similar qualifications who were not members of the protected group were promoted at the time plaintiff's request for promotion was denied. Id.
If the plaintiff succeeds in proving a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Finally, if the defendant succeeds, plaintiff must prove by a preponderance of the evidence that the reasons given by the defendant for the challenged employment action were merely pretextual. Id. at 804, 93 S.Ct. at 1825. At the conclusion of the trial, after all the evidence is in, the presumption of discrimination created from the production of prima facie proofs "drops from the case" and the district court is in a position to decide the ultimate question: whether the defendant intentionally discriminated against plaintiff on an invidious basis. Tate v. Weyerhaeuser Co., 723 F.2d 598, 603 (8th Cir.1983), cert. denied, 469 U.S. 847, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984). The burden of proving intentional discrimination "remains at all times with the plaintiff" to prove that his race and protected activity were the determining reason for the adverse employment decisions. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207, 215 (1981).
With respect to the January 1986 and November or December 1986 job postings, plaintiff failed to put forth a prima facie case because there was no evidence regarding the race or qualifications of the persons receiving the jobs over plaintiff. Thus, plaintiff failed to show that other employees with similar qualifications who were not members of his protected group were promoted at the time plaintiff's request for transfer was denied.
Plaintiff did succeed in putting forth a prima facie case of race discrimination with respect to the April 1986, September 1986 and June 1987 job postings. First, plaintiff was black and a member of a protected class. Second, he applied and was qualified for the store manager positions for which Southland was seeking applicants by the April 1986, September 1986 and June 1987 job postings. Third, despite his qualifications, he was rejected. Fourth, the employees who received the job assignments plaintiff sought had similar qualifications but were white.
Because plaintiff succeeded in proving a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. See McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. *1015 Southland denied plaintiff the transfers because he was less qualified than the candidates who received the jobs. The persons selected for the positions had been trained in the particular store where Southland sought a store manager. In one case, plaintiff previously had personnel relations problems at the store where he applied for a manager position. Plaintiff's performance as a manager was sporadic. Sometimes he received satisfactory ratings, sometimes he received unsatisfactory ratings.
The defendant met its burden of articulating a nondiscriminatory reason for discharge: its belief that other candidates were more qualified than plaintiff to manage the higher volume stores.
After the employer has advanced a nondiscriminatory reason for its action, the plaintiff must then prove by a preponderance of the evidence that the employer's proffered reason was a mere pretext for discrimination. Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. A plaintiff may demonstrate pretext in one of two ways: (1) by persuading the court that a discriminatory reason more likely motivated the employer than its articulated reason, or (2) by indirectly showing than the employer's proffered explanation is unworthy of credence. United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); Burdine, 450 U.S. at 256, 101 S.Ct. at 1095.
Plaintiff failed to put forth any credible evidence of pretext. Each of the persons involved with the decisions to deny plaintiff a transfer to a higher volume store had a nondiscriminatory reason for doing so. Each believed that another candidate was more qualified than plaintiff for the particular position. It is not the job of the Court to determine whether the decision not to place plaintiff in a high volume sales store was sound. "While an employer's judgment may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was pretext for illegal discrimination." Clay v. Hyatt Regency Hotel, 724 F.2d 721, 725 (1984).
The belief that plaintiff had performance problems as a manager was more than mere pretext. Plaintiff's performance was sporadic: sometimes satisfactory, sometimes not. The evidence failed to show that Southland intentionally discriminated against plaintiff on any invidious basis.

Reprisal Discrimination
Plaintiff also alleges that he received unsatisfactory performance ratings in retaliation for his EEOC complaints. Plaintiff may establish a prima facie case by showing (1) that he engaged in activity protected by Title VII; (2) that he was the recipient of an adverse employment action; and (3) that a causal connection existed between the first two elements. Womack v. Munson, 619 F.2d 1292, 1296 (8th Cir. 1980), cert. denied 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981); Burrows v. Chemed Corp., 567 F.Supp. 978, 986 (E.D.Mo.1983), aff'd 743 F.2d 612 (8th Cir. 1984).
First, plaintiff proved that he was engaged in Title VII protected activity. Plaintiff had filed a complaint with the EEOC alleging race discrimination by Southland, and, later complaints alleging retaliation for his prior EEOC complaint. Second, the plaintiff also proved that he received an adverse employment action within one year of his protected EEOC activities. Plaintiff received numerous unsatisfactory performance ratings following his EEOC complaint. Third, the proximity in time of Saunders' complaints and the unsatisfactory performance ratings permits an inference of causation for the purpose of establishing a prima facie case.
Because plaintiff succeeded in proving a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. See McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. Southland denied plaintiff the transfers because he was less qualified than the candidates who received the jobs. The persons selected for the positions had been trained in the particular store where Southland sought a store manager. In one case, *1016 plaintiff previously had personnel relations problems at the store where he applied for a manager position. Again, plaintiff's performance as a manager was sporadic. Sometimes he received satisfactory ratings, sometimes he received unsatisfactory ratings.
The defendant met its burden of articulating a nondiscriminatory reason for discharge: its belief that other candidates were more qualified than plaintiff to manage the higher volume stores.
After the employer has advanced a nondiscriminatory reason for its action, the plaintiff must then prove by a preponderance of the evidence that the employer's proffered reason was a mere pretext for discrimination. Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. Again, a plaintiff may demonstrate pretext in one of two ways: (1) by persuading the court that a discriminatory reason more likely motivated the employer than its articulated reason, or (2) by indirectly showing than the employer's proffered explanation is unworthy of credence. Aikens, 460 U.S. at 716, 103 S.Ct. at 1482; Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. Plaintiff failed to put forth any credible evidence of pretext.
While under McDonnell Douglas the burden of producing evidence shifts from the plaintiff to the employer and back to the plaintiff, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff." Burdine, 450 U.S. at 253, 101 S.Ct. at 1093. The Court must decide the ultimate question: whether the defendant intentionally discriminated against plaintiff on an invidious basis. Tate, 723 F.2d at 603.
Plaintiff did not establish that the unsatisfactory ratings or denial of transfers were in retaliation for his EEOC complaints. Plaintiff did receive some unsatisfactory monthly ratings after he had filed his EEOC complaint, but Griffin rated him satisfactory overall for the same six-month period. All of Southland's supervisors testified that they were unaware of plaintiff's EEOC complaints until after he filed this lawsuit. Only Corbin allegedly made any type of remark related to plaintiff's EEOC complaint. At that time, Corbin was no longer plaintiff's supervisor and he later left the employ of defendant.
Further, each of the persons involved with the decisions to deny plaintiff a transfer to a higher volume store had a nondiscriminatory reason for doing so. Each believed that another candidate was more qualified than plaintiff for the particular position. As stated previously, it is not the job of the Court to determine whether the decision not to place plaintiff in a high volume sales store was sound. "While an employer's judgment may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was pretext for illegal discrimination." Clay v. Hyatt Regency Hotel, 724 F.2d 721, 725 (1984).
The belief that plaintiff had performance problems as a manager was more than mere pretext. The evidence failed to show that Southland intentionally discriminated against plaintiff on any invidious basis.
For the foregoing reasons, the Court enters judgment in favor of defendant and against plaintiff on the merits of plaintiff's complaint.
NOTES
[1] The case was previously set for trial, but was stayed pursuant to 11 U.S.C. § 362 pending Chapter 11 bankruptcy proceedings against Southland in the United States Bankruptcy Court, Northern District of Texas, Dallas Division, Case No. 390-37119 HCA-11. The Bankruptcy Court approved a reorganization plan and terminated the stay effective March 5, 1991.
[2] Although Ray Griffin and Sophia Griffin share the same last name, they are not related.