**John E. FERGUSON, Plaintiff-Appellant,**

v.

**The FLYING TIGER LINE, INC., Defendant-Appellee.**

No. 80–5580.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 6, 1982.

Decided Oct. 1, 1982.

Clarence Lowe, Los Angeles, Cal., for plaintiff-appellant.

Donald E. Warner, Jr., Tuttle & Taylor, Los Angeles, Cal., for defendant-appellee.

Before NELSON and REINHARDT, Circuit Judges, MacBRIDE,* District Judge.

REINHARDT, Circuit Judge:

Plaintiff appeals from the judgment and order of the district court, 491 F.Supp. 1348, granting defendant's motion for summary judgment. We reverse.

Plaintiff is a black male who unsuccessfully sought employment as a flight engineer with defendant, Flying Tiger Line, Inc. Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) in June 1974, alleging that he was denied employment due to his race. In settlement of this charge, a Pre-Determination Settlement Agreement [Agreement] was entered into by plaintiff and defendant. The Agreement was approved by the EEOC District Director in April, 1977.

The Agreement provided that the defendant would hire plaintiff as a flight engineer ("second officer") and would thereafter "make flying assignments . . . without regard to race, sex, [or] color . . . [and] give [Plaintiff] the first available flying assignment based on his seniority." Paragraph 12 of the Agreement further provided that

[Defendant] agrees to notify the District Director of the Commission [EEOC] within sixty days of any proposed adverse personnel action to be taken against [Plaintiff].

Pursuant to the Agreement, plaintiff began working for defendant as a second offi-cer trainee in April 1977. Within two months plaintiff completed ground training and passed his initial aircraft check ride. Thereafter, whenever a routine captain's evaluation report was completed after flights made by plaintiff, the reports recommended that plaintiff be retained by defendant.

Despite these favorable reports, defendant's Manager of Second Officers asked a Check Second Officer to administer a "check ride" and to evaluate plaintiff's performance. In October 1977, following the check ride, the officer reported that plaintiff's performance was unsatisfactory. Another check ride was performed a week later by another Check Second Officer who likewise rated plaintiff's performance as unsatisfactory.

On November 9, 1977, defendant removed plaintiff from "line" flying duty and required him to attend a hearing on his performance as a second officer. On that same day, defendant terminated plaintiff's employment with the defendant and notified the EEOC that plaintiff had been removed from line flying duty. Defendant did not notify the EEOC until December 23, 1977, that plaintiff's employment had been terminated.

On December 22, 1978, plaintiff filed suit in federal court. The complaint alleged a violation of 42 U.S.C. § 1981 (Count I), a violation of Title VII of the Civil Rights Act of 1964 (Count II), and breach of the Agreement due to defendant's failure to give notice to the EEOC prior to discharging plaintiff (Count III). In December 1979, plaintiff withdrew Counts I and II, leaving only Count III (breach of Agreement).[1] The parties stipulated that the

---

* Honorable Thomas J. MacBride, Senior United States District Judge for the Eastern District of California, sitting by designation.

1. Plaintiff's suit properly invoked the subject matter jurisdiction of the federal court because Counts I and II alleged claims arising under the federal civil rights laws. Plaintiff brought his third count in the form of a breach of contract claim, denominating it as a state law action, and invoking the principle of pendent jurisdiction. When the federal question claims were dropped, the court had the authority to retain jurisdiction over a state law claim, *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 729, 86 S.Ct. 1130, 1139, 1140, 16 L.Ed.2d 218 (1966). It did so here, and no challenge is raised to that procedure on appeal.

only issue to be decided by the district court was whether defendant had breached the Agreement by discharging plaintiff without giving prior notice to the EEOC of the action.

Plaintiff filed a motion for summary judgment asserting that, as a matter of law, the Agreement required notice to the EEOC *prior* to plaintiff's discharge. Defendant filed a cross motion for summary judgment asserting that, as a matter of law, the Agreement permitted notice to the EEOC at "any time within 60 days before or after" plaintiff's discharge from employment. The district court granted the defendant's motion for summary judgment.

■■■■ In reviewing a motion for summary judgment, we must determine whether there exists any genuine issue of material fact. and whether the district court correctly applied the substantive law in ruling on the motion. *Inland Cities Express, Inc. v. Diamond National Corp.,* 524 F.2d 753 (9th Cir. 1975); 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2716 at 437–38 (1973). Summary judgment is proper if, viewing the evidence in the light most favorable to the party opposing the motion, the movant is clearly entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Radobenko v. Automated Equipment Corp.,* 520 F.2d 540 (9th Cir. 1975).

■■■ In this case, the parties agree on all of the material facts relevant to the issue raised by the motions for summary judgment; they disagree only as to the meaning of that portion of the Agreement which states that the defendant must notify the EEOC "within sixty days of any proposed adverse personnel action to be taken against" plaintiff. Therefore we need only determine the proper meaning of the Agreement—whether the Agreement requires de-fendant to provide notice to the EEOC *prior* to taking an adverse personnel action. We conclude that it does.

On appeal, both parties argued the case on the theory that the Agreement must be interpreted under California law. Accordingly, we do so here.[2] We start with the elementary principle that the contract must be viewed as a whole so as to give effect to every part thereof. Cal. Civ. Code § 1641 (West 1973); 1 B. Witkin, *Summary of California Law, Contracts* § 524 (8th ed. 1973). Next we note that, under California law,

> The interpretation of a written instrument, even though it involves what might properly be called questions of fact (see Thayer, Preliminary Treatise on Evidence, pp. 202–204), is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. (See Civ. Code, §§ 1635–1661; Code Civ. Proc., §§ 1856–1866.) Extrinsic evidence is "admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible" [citations], and it is the instrument itself that must be given effect. (Civ. Code, §§ 1638, 1639; Code Civ. Proc., § 1856.) It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. Accordingly, "An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence [citation]."

*Parsons v. Bristol Development Co.,* 62 Cal.2d 861, 865, 44 Cal.Rptr. 767, 770, 402 P.2d 839, 842 (1965) (citations omitted).

The defendant contends that the crucial language in paragraph 12 of the Agreement

---

**2.** The principles of California contract interpretation on which we rely are unremarkable. We have no doubt that we would reach the result we reach below were we to apply principles of federal common law.

is the phrase "within sixty days of." Defendant first notes that common dictionary definitions demonstrate that the phrase "within ... of" means either before *or* after the reference point. *See, e.g., Webster's New International Dictionary* (2d ed. 1959). "Within" means "[i]n the time limits or compass of; ... b. not longer in time than; before the end or since the beginning of." *Id.* at 2941. "Of" means that from which position or reckoning is defined; from. *Id.* at 1689.

The defendant also relies on two cases in which state courts have held that the phrase "within ... of" means both before and after the reference point. In *Interior Linseed Co. v. Becker-Moore Paint Co.,* 190 Mo.App. 1, 175 S.W. 308 (1915), *rev'd,* 273 Mo. 433, 202 S.W. 566 (1918), pursuant to the contract, a certain shipment was supposed to be made "within ten (10) days of" a specified date. The court held that a shipment made seven days after the specified date was made within the terms of the contract. Similarly, in *Branch v. Virginia Employment Commission,* 219 Va. 609, 249 S.E.2d 180 (1978), the court interpreted a rule disallowing three wage garnishments "within 12 months of each other." The court held that a third garnishment occurring within a 12 month period after the first garnishment was forbidden by the rule.

We agree with the defendant that, where the context of its usage does not require a different interpretation, the phrase "within sixty days of" means any time during the period commencing 60 days before and terminating 60 days after the reference point. However, there are many instances in which such a construction would clearly be contrary to logic, reality, and most important, the plain intent and purpose of the contract. In such circumstances, the particular meaning required by the usage of the phrase in the particular contract controls. Here, the phrase must be read in the context of both Paragraph 12 and the remainder of the Agreement. So doing makes it

clear that the meaning suggested by the defendant is wrong.

Paragraph 12 requires notice "within sixty days of any *proposed* adverse personnel action *to be taken*" (emphasis added). The words "proposed" and "to be taken" indicate that the required notice pertains to an adverse personnel action that will occur at some time in the future, *i.e.,* at some time *after* notice has been given. "Proposed" means "[t]o put forth for consideration or acceptance; to ... plan or intend; or to make a proposal; form or declare a purpose or design." *Webster's New World Dictionary of the American Language* 1140 (1970). "To be taken" is, of course, a future tense of the verb "take," which means, *inter alia,* to "do" or "perform." Thus, the phrase "proposed action to be taken" refers to an action which has been proposed, *i.e.,* declared or put forth for consideration, but which has not yet occurred, *i.e.* remains "to be taken." Notice of a "proposed action to be taken" therefore can be given only *before* the action has been taken: if notice is given after the action has occurred, the action is neither "proposed" nor does it remain "to be taken."

Thus, although under other circumstances "within sixty days of" may mean within 60 days before or after the specified event, when that phrase is combined with the phrase "proposed action to be taken," it is clear that the language of the Agreement requires that the notice be given *before* the adverse personnel action is taken.

This interpretation of Paragraph 12 is consistent with the purpose of the Pre-Determination Settlement Agreement. The EEOC is authorized to attempt "to eliminate any ... alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion," 42 U.S.C. § 2000e–5(b) (1976). To this end, the EEOC persuaded the parties to settle their differences by agreement. In exchange for plaintiff's promise to forego his right to enforce his civil rights in court, the defendant promised not to discriminate in the fu-

ture against plaintiff on the basis of race and to notify the EEOC of any proposed future action to be taken against plaintiff.

Notification to the Commission by the defendant after an action has been taken would not serve the basic purpose of the settlement agreement: if the defendant committed a discriminatory act, the plaintiff could in any event seek enforcement of his rights before the Commission by filing a complaint. *Post facto* notice to the EEOC would add little, if anything, to the effective protection of plaintiff's right not to be subjected to future discriminatory acts. Notice by the defendant is clearly intended to provide the EEOC with an opportunity to review the proposed action to determine if it complies with the Agreement; if the proposed action does not comply, the EEOC can then attempt, pursuant to its authority under 42 U.S.C. § 2000e–5(b), to dissuade the defendant from taking the action. That, it seems evident, is why the EEOC required notice of a "proposed action to be taken" rather than notice of an "action taken."

The defendant suggests that if the phrase "within sixty days of" refers only to a time period *before* the proposed action, the word "within" requires that notice be given at any time *during* the 60 day period preceding the proposed action. Defendant points out that under this interpretation it would not have been a breach of the Agreement to notify the EEOC only 60 seconds prior to terminating plaintiff. Defendant states, however, that this interpretation would be nonsensical. We agree that such an inter-

pretation would not serve the basic purpose of the Agreement. The 60 day period is designed to allow the EEOC sufficient time to conduct an investigation into the underlying circumstances; it cannot conduct such an investigation with only 60 seconds notice. However, this fact leads us to a different conclusion than it leads defendant. We conclude that, viewing the words used in their proper context, the phrase "within sixty days of any proposed adverse personnel action to be taken" requires the defendant to notify the EEOC at least 60 days prior to taking an adverse personnel action.

Since the defendant was required to notify the EEOC before terminating plaintiff and admits that it failed to do so, we hold that (1) the district court incorrectly granted summary judgment for the defendant, and (2) plaintiff is entitled to judgment as a matter of law on Count III (breach of Agreement).[3] We note, that because the defendant did not give the EEOC notice of plaintiff's discharge until *after* it had terminated him, it is not necessary to our holding that we reach the conclusion we have set forth above; *i.e.,* that the phrase "within sixty days of any proposed ... action to be taken" requires at least 60 days advance notice of the proposed action to be taken. It would be sufficient were we to conclude only that advance notice is required. Thus, even were we to rest our decision solely on the relationship in the contract between the word "notify" and the phrase "of any proposed action to be taken," and to give the word "within" its ordinary meaning, we would still be required to reach the result we reach here.[4]

---

**3.** Defendant argues that the Agreement is void to the extent that it conflicts with the obligations imposed on defendant by Federal Aviation Administration safety regulations. Specifically, defendant contends that the regulations prohibit use of a second officer who has failed a proficiency check. *See* 14 C.F.R. § 121.-441(a). That argument, correct or not, has no bearing on the issue before us. Defendant complied with whatever obligations it may have had under the regulations when it removed plaintiff from line flying duty. Plaintiff does not now complain of that action but only

of defendant's failure to give the EEOC 60 days notice prior to *terminating* him. The fact that the defendant agreed, *inter alia,* not to terminate plaintiff's employment without first giving the EEOC 60 days notice does not conflict with any requirement that defendant remove from *operations* a second officer who has failed a proficiency check.

**4.** While we agree that giving the word "within" its more usual construction would not best effectuate the purposes of the settlement agreement, to do so would certainly be more consistent with the purposes of the agreement than

The judgment and order granting summary judgment for the defendant are REVERSED. The district court is directed to grant summary judgment for the plaintiff on Count III (breach of Agreement). The district court shall make the necessary determinations as to the proper relief to be granted.

REVERSED and REMANDED.

---

would giving it the meaning suggested by defendant.