797 F.2d 727
 41 Fair Empl.Prac.Cas. 809,
41 Empl. Prac. Dec. P 36,501,
1 Indiv.Empl.Rts.Cas. 586
Diane MILLER and Pamela Lewis, Plaintiffs-Appellants,
v.
FAIRCHILD INDUSTRIES, INC., a Maryland Corporation,
Defendant-Appellee.
 No. 85-5614.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 4, 1985.
Decided Aug. 12, 1986.
 
 Tryon J. Sheppard, Los Angeles, Cal., for plaintiffs-appellants.
 Wendy Carson, Los Angeles, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before FLETCHER, PREGERSON, and CANBY, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 Diane Miller and Pamela Lewis appeal from the trial court's granting of Fairchild Industries' motion for summary judgment. Miller and Lewis claim that Fairchild discharged them from employment in retaliation for filing discrimination charges with the Equal Employment Opportunity Commission. Lewis and Miller also allege intentional and negligent infliction of emotional distress, breach of contract, tortious breach of contract, and fraud. We reverse and remand.
 
 BACKGROUND
 
 2
 Diane Miller worked as a contracts administrator and Pamela Lewis worked as a junior designer for Fairchild Industries. In mid-1982, Lewis and Miller, both black women, filed race discrimination charges with the Equal Employment Opportunity Commission (EEOC). In September 1982, Fairchild, Miller and Lewis, with EEOC participation, signed EEOC no fault settlement agreements.
 
 
 3
 In the agreements, Fairchild promised to transfer Lewis to a different supervisor, permit her to remain in the Engineering Department, allow her to begin "Cad/Cam" training and attend subsequent courses, and to remove any negative material from her personnel file.
 
 
 4
 In its agreement with Miller, Fairchild promised to review her attendance records to determine whether a previously refused merit increase could be granted, to inform Miller of training opportunities, and to provide her with an equal opportunity to attend available training.
 
 
 5
 In consideration for Fairchild's promises, Miller and Lewis agreed to give up their rights to sue under Title VII for the discrimination charges they had made. Both settlement agreements contained clauses stating that the agreement constituted the "complete understanding" between the parties, and that "[n]o other promises or agreements shall be binding unless signed by these parties." Fairchild also agreed to notify the EEOC within ten days of satisfying its promises under the agreement.
 
 
 6
 Less than two months later, on November 5, 1982, Fairchild laid off Miller and Lewis. Miller and Lewis claim that the layoffs were in retaliation for the protected activities in which they had engaged--the filing of EEOC complaints.
 
 
 7
 Miller and Lewis brought this action, claiming that their retaliatory discharges constituted prohibited discrimination in violation of 42 U.S.C. Sec. 1981, the Civil Rights Act of 1964, section 704(a), 42 U.S.C. Sec. 2000e-3(a), and state law. They also claim emotional distress, breach of the EEOC settlement agreements, tortious breach, and fraud. The trial court granted Fairchild's motion for summary judgment on all counts.
 
 DISCUSSION
 
 8
 We review the district court's grant of summary judgment de novo. Viewing the evidence in the light most favorable to Miller and Lewis, we must determine whether there is any genuine issue of material fact, and whether the substantive law has been applied correctly. Lowe v. City of Monrovia, 775 F.2d 998, 1003 (9th Cir.1985), amended, 784 F.2d 1407 (9th Cir.1986)
 
 
 9
 I. Summary Judgment on the Retaliatory Discharge Claim
 
 A. Title VII Claim
 
 10
 Under section 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-3(a), it is unlawful to retaliate against an employee because she has taken action to enforce rights protected under Title VII.
 
 
 11
 Lewis and Miller allege that their layoffs directly resulted from filing discrimination charges with the EEOC, settled between the parties less than two months before the termination. Fairchild disputes this contention, arguing that the company terminated Miller and Lewis as part of a necessary, ongoing layoff program instituted for economic reasons.
 
 
 12
 The order and allocation of proof for Title VII suits outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973), also governs actions for retaliatory discharge under section 704(a). Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir.1982). To establish a prima facie case of discriminatory retaliation, a plaintiff must show that: (1) she engaged in an activity protected under Title VII; (2) her employer subjected her to adverse employment action; (3) there was a causal link between the protected activity and the employer's action. Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1354 (9th Cir.1984); Cohen, 686 F.2d at 796. Causation sufficient to establish a prima facie case of unlawful retaliation may be inferred from the proximity in time between the protected action and the allegedly retaliatory discharge.[1] See Love v. Re/Max of America, Inc., 738 F.2d 383, 386 (10th Cir.1984); Burrows v. Chemed Corp., 567 F.Supp. 978, 986 (E.D.Mo.1983), aff'd, 743 F.2d 612 (8th Cir.1984) (demotion following protected activity justifies inference of retaliatory motive); Cf. Ayon v. Sampson, 547 F.2d 446, 448-51 (9th Cir.1976) (prima facie case consisted of showing that discharge occurred shortly after filing sexual harassment complaint; court then found that employer had a legitimate explanation). Alternatively, the plaintiff can prove causation by providing direct evidence of retaliatory motivation. See A. Larson, Employment Discrimination Sec. 87.31 at 17-120 (1984).
 
 
 13
 Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory explanation for the action. Wrighten, 726 F.2d at 1354. To satisfy this burden, the employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 257, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981); see Lowe, 775 F.2d at 1007.
 
 
 14
 If the employer successfully rebuts the inference of retaliation that arises from establishment of a prima facie case, then the burden shifts once again to the plaintiff to show that the defendant's proffered explanation is merely a pretext for discrimination. Wrighten, 726 F.2d at 1354.
 
 
 15
 At the summary judgment stage in discrimination cases, the order of proof and shifting of burdens is viewed in light of the traditional summary judgment test. Foster v. Arcata Associates, Inc., 772 F.2d 1453, 1459 (9th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986). Thus, to withstand a motion for summary judgment, the opposing party must "produce 'specific facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed.' " Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983) (emphasis in original) (quoting Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir.1979), cert. denied, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980)). The plaintiff need not prove her prima facie case by a preponderance of the evidence at this stage. Foster, 772 F.2d at 1459.
 
 
 16
 The first two elements of a prima facie case of retaliatory discharge clearly have been established here: the filing of discrimination charges with the EEOC constituted a protected activity; and Miller and Lewis subsequently were laid off from employment at Fairchild. At issue is whether they have provided evidence sufficient to warrant the inference that their discharges were causally related to their protected activities.
 
 
 17
 To support their claim, Miller and Lewis point to two facts: (1) the management personnel who participated in the EEOC settlement negotiations were also responsible for their layoffs, thus proving that the company knew Miller and Lewis had engaged in protected activity; and (2) Lewis's and Miller's layoffs occurred less than two months after they negotiated the EEOC settlement agreements.
 
 
 18
 This evidence is sufficiently probative of Fairchild's alleged retaliatory motivations in discharging Lewis and Miller to withstand a summary judgment motion on grounds of failure to establish a prima facie case. Love, 738 F.2d at 386 (employee fired two hours after the employee requested pay raise pursuant to Equal Pay Act); Summers v. Allis Chalmers, 568 F.Supp. 33, 37 (N.D.Ill.1983) (plaintiff discharged twelve days after filing EEOC claim; court held that on summary judgment close connection in time between filing of suit and discharge may raise a question of fact as to the causal connection); Burrows, 567 F.Supp. at 986 (prima facie case established by showing that discrimination charges were filed with the EEOC, defendants were aware of the lawsuit, plaintiff was demoted, and the transfer followed the protected activity, thus raising an inference of retaliatory motive); Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F.Supp. 318, 324-25 (D.Mass.), aff'd, 545 F.2d 222 (1st Cir.1976) (to establish a prima facie case, plaintiff must show that her discharge followed her protected activities within such period of time that court can infer retaliatory motive; plaintiff's discharge six months after EEOC settlement satisfies the causation requirement).
 
 
 19
 Because Lewis's and Miller's evidence establishes a prima facie case of retaliatory discharge, the burden then shifts to Fairchild to provide a legitimate explanation for the layoffs. Fairchild's stated reason was that the layoffs resulted from economic necessity. Fairchild furnished evidence that during the two-year period from 1980 to 1982, the company reduced its workforce by 200 employees, or by one-third. More layoffs were rumored at the time of the EEOC settlement negotiations at issue in this case. The company asserts that Miller and Lewis were selected for layoff using established company guidelines[2] on the basis of which a determination was made that they were the least qualified remaining employees.
 
 
 20
 We will assume arguendo that the company's economic misfortunes provide a legally sufficient explanation of the company's actions against Miller and Lewis. See Allis Chalmers, 568 F.Supp. at 37 (employer met its burden with proof of a reduction in work force caused by severe economic difficulty; 174 employees, including the plaintiff, were laid off). On summary judgment, this articulation of a legitimate reason shifts the burden back to Lewis and Miller to raise a genuine factual question whether Fairchild's stated reason is in reality a mere pretext. Lowe, 775 F.2d at 1008.
 
 
 21
 To show pretext, the plaintiff is not necessarily required to introduce evidence beyond that already offered to establish her prima facie case, although she may of course provide additional proof of the defendants' unlawful motivation. See Burdine, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10; Lowe, 775 F.2d at 1008; Larson, Sec. 87.33 at 17-133.
 
 
 22
 Miller and Lewis rely not only on the evidence already discussed, but also on their declarations stating that they were the only persons within their respective departments who were dismissed during the November 5, 1982 layoffs.[3]
 
 
 23
 Courts have recognized that in discrimination cases, an employer's true motivations are particularly difficult to ascertain, see United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (acknowledging that discrimination cases present difficult issues for the trier of fact, as "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes"), thereby making such factual determinations generally unsuitable for disposition at the summary judgment stage, Lowe, 775 F.2d at 1009 (stating that very little additional evidence is required to raise a genuine issue of fact regarding motive, and concluding that summary judgment on the merits is ordinarily inappropriate once a prima facie case has been established).
 
 
 24
 Because we conclude that Fairchild's true reasons for laying off Miller and Lewis present an "elusive factual question," Burdine, 450 U.S. at 255 n. 8, 101 S.Ct. at 1094 n. 8, that is incapable of resolution on summary judgment, we hold that the trial court erred in dismissing the Title VII cause of action.
 
 B. Section 1981 Claim
 
 25
 A plaintiff with a cause of action under section 1981 is entitled to equitable and legal relief, including compensatory and possibly punitive damages. Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). Thus, section 1981 provides remedies that overlap yet are independent of Title VII remedies. See Lowe, 775 F.2d at 1010. Plaintiffs may seek relief under both Title VII and section 1981. See id.
 
 
 26
 As with Title VII disparate treatment actions, claims under section 1981 require proof of intentional discrimination. Id; Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 537 (9th Cir.1982). This circuit has held that because the same standards apply to both claims, "facts sufficient to give rise to one are sufficient to give rise to the other." Lowe, 775 F.2d at 1010. Thus, a plaintiff who raises genuine factual issues regarding disparate treatment under Title VII presents a triable claim under section 1981. See Gay, 694 F.2d at 538-39.
 
 C. State Law Claim
 
 27
 The California Fair Employment Practices Act, Cal. Gov't Code Sec. 12940(f) (West Supp.1986), like Title VII, prohibits an employer from discharging an employee in retaliation for engaging in protected activities under the Act. For the reasons set forth supra, it was error to dismiss this claim on summary judgment. See Northern Inyo Hospital v. Fair Employment Practice Commission, 38 Cal.App.3d 14, 25, 112 Cal.Rptr. 872, 879 (1974) (it is unlawful for an employer to retaliate against a person for asserting rights granted under the F.E.P.A.).
 
 
 28
 II. Summary Judgment on Breach of Contract Claims
 
 A. Breach of Implied Covenant
 
 29
 Settlement agreements have the attributes of contracts, and they should be construed as such. See Ferguson v. Flying Tiger Line, Inc., 688 F.2d 1320, 1321-22 & n. 1 (9th Cir.1982); cf. United States v. ITT Continental Baking Co., 420 U.S. 223, 236-37 & n. 10, 95 S.Ct. 926, 934-35 & n. 10, 43 L.Ed.2d 148 (1975) ("consent decrees and orders have many of the attributes of ordinary contracts"); Brown v. Neeb, 644 F.2d 551, 557 (6th Cir.1981) (same).
 
 
 30
 In construing the settlement agreements here, we apply principles of California contract law. Ferguson, 688 F.2d at 1322. It is well-established that in California, the law implies in every contract a covenant of good faith and fair dealing that prohibits either party from taking actions that deprive the other of the benefits of the agreement. Seaman's Direct Buying Service v. Standard Oil Co. of California, 36 Cal.3d 752, 768, 206 Cal.Rptr. 354, 362, 686 P.2d 1158, 1166 (1984). Employment contracts are no exception. See Foley v. U.S. Paving Co., 262 Cal.App.2d 499, 505, 68 Cal.Rptr. 780, 784 (1968).
 
 
 31
 Miller and Lewis claim that termination of their employment within two months of negotiating the settlement agreements constituted a breach of an implied term of the agreements.[4] They argue that without continued employment for some period of time, the agreements have little meaning. In essence, they claim that Fairchild, by terminating them, prevented them from enjoying the benefit of Fairchild's promises, thereby breaching the covenant of good faith and fair dealing.
 
 
 32
 Fairchild counters that the settlement agreements contained no promises of layoff immunity, that Miller and Lewis knew of rumored layoffs at the time of settlement negotiations, and that they knowingly assumed the risk. Fairchild relies heavily on the Supreme Court's decision in Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984), to support its argument that a court may not imply layoff protection from the four corners of a settlement agreement that fails to address expressly the layoff issue.
 
 
 33
 In Stotts, the City of Memphis and minority firemen entered into a consent decree to remedy perceived deficiencies in fire department hiring and promotion practices with respect to blacks. Pursuant to the decree, the City agreed to take specified actions concerning named individuals, and also adopted a long range affirmative action plan governing hiring and promotion. The decree was silent regarding layoffs. The City later challenged a district court injunction against laying off firemen pursuant to the department's established seniority system, based on a "last hired, first fired" policy.
 
 
 34
 The Supreme Court held that the scope of the consent decree " 'must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it' " Stotts, 467 U.S. at 574, 104 S.Ct. at 2586 (quoting United States v. Armour & Co., 402 U.S. 673, 681-82, 91 S.Ct. 1752, 1757-58, 29 L.Ed.2d 256 (1971)). The Court thought it highly unlikely that the parties intended to depart from the seniority system, absent any express statement to that effect in the consent decree. Moreover, the court found language in the decree favoring an interpretation in harmony with the pre-existing seniority system. Id. at 574-75, 104 S.Ct. at 2586. The Court further concluded that it was reasonable to assume that the decree's remedies would not "exceed the bounds of the remedies that are appropriate under Title VII, at least absent some express provision to that effect" Id. at 575, 104 S.Ct. at 2586. The Court also observed that the district court validly could not have ordered competitive seniority for minority firefighters absent proof that each individual firefighter had been a victim of discrimination. Id. at 578-79, 104 S.Ct. at 2587-88.
 
 
 35
 Stotts clearly does not control Miller's and Lewis's case. The affirmative action provisions in the Stotts decree irreconcilably conflicted with the "last hired, first fired" procedures under the established, negotiated seniority system. In interpreting the consent decree's terms, the Court reasonably concluded that under the circumstances the parties would have expressly stated any intent to depart from the requirements of the bargained-for seniority system.
 
 
 36
 Here by contrast, no such inherent conflict between the settlement agreements and Fairchild's layoff policies exists. Moreover, the remedy implied under the agreement--layoff protection--did not exceed permitted remedies under Title VII in this case.
 
 
 37
 It is true that the settlement agreements in this case were silent on the question of layoffs and explicitly stated that it represented the "complete understanding between the [parties]". However, when construing an agreement of this nature, as with any contract, the court, for a proper understanding of the agreement, often must look to the circumstances surrounding the agreement's formation. See ITT Continental Baking Co., 420 U.S. at 238, 95 S.Ct. at 935. This rule of interpretation in no way conflicts with the "four corners" rule quoted in Stotts. See id.; EEOC v. Safeway Stores Inc., 714 F.2d 567, 576 & n. 18 (5th Cir.1983) (extrinsic evidence is admissible to interpret a settlement agreement), cert. denied, 467 U.S. 1204, 104 S.Ct. 2384, 81 L.Ed.2d 343 (1984); Ferguson, 688 F.2d at 1322-23 (same). Thus, the failure to address explicitly the layoff issue in the agreement is not determinative, if the surrounding circumstances demonstrate that the parties intended to provide layoff protection.
 
 
 38
 In this case, Fairchild has presented evidence that Miller and Lewis knew that layoffs were occurring periodically at the company. However, both Miller and Lewis have declared that at the time of settlement negotiations, it was their understanding that continued employment for some reasonable period--albeit not indefinitely--was part of the quid pro quo for relinquishment of their Title VII causes of action. Such an expectation would not be unreasonable, since without some assurance of continued employment, Fairchild's promises would be ephemeral and empty.
 
 
 39
 Summary judgment on the breach of contract claim was inappropriate in this case, where the circumstances surrounding the agreement's formation permit conflicting factual inferences affecting the proper interpretation of the agreement.
 
 B. Bad Faith Breach of The Implied Covenant
 
 40
 As discussed supra, we apply California law to Miller's and Lewis's breach of contract claims. If the highest state court has not directly addressed an issue, we look to the decisions of the intermediate state courts of appeal. Tenneco West, Inc. v. Marathon Oil Co., 756 F.2d 769, 771 (9th Cir.) (federal court will not disregard state appellate decision on an issue of state law, particularly where state's highest court has refused to review the appellate decision), cert. denied, --- U.S. ----, 106 S.Ct. 134, 88 L.Ed.2d 111 (1985); American Triticale, Inc. v. Nytco Services, Inc., 664 F.2d 1136, 1143 (9th Cir.1981). We will follow the decision of the state court of appeal unless there exists convincing evidence that the state supreme court would decide the issue differently. Id. (citing Stoner v. New York Life Ins. Co., 311 U.S. 464, 467, 61 S.Ct. 336, 337-38, 85 L.Ed. 284 (1940)).
 
 
 41
 In Seaman's, 36 Cal.3d at 768, 206 Cal.Rptr. 362, 686 P.2d at 1166, the California Supreme Court declined to address the issue of the circumstances in which a tort action would be available for breach of the covenant of good faith and fair dealing. Noting that tort actions could be brought for breaches of insurance contracts, the court intimated, however, that tort liability might also lie in the context of employment relationships, which are like insurance relationships in critical respects. Id. at 768 & n. 6, 206 Cal.Rptr. at 362 & n. 6, 686 P.2d at 1166 & n. 6 (insurer and insured share "special relationship," which has characteristics of public interest, adhesion, and fiduciary responsibility; relationship of employer to employee "has some of the same characteristics as the relationship between insurer and insured").
 
 
 42
 Relying on Seaman' s, the California Court of Appeal in Wallis v. Superior Court, 160 Cal.App.3d 1109, 207 Cal.Rptr. 123 (1984), concluded that an employee could state a cause of action against an employer for a tortious breach of the implied covenant of good faith and fair dealing in an express employment-related contract. In Wallis, the plaintiff employee, slated for layoff after 32 years of service, entered into an agreement with his employer. Not yet eligible for retirement, the employee agreed to accept monthly payments in exchange for his promise not to compete with his employer. The employer later ceased making the payments and the plaintiff sued for bad faith breach of the contract. The Court of Appeal first analyzed the special characteristics of insurance relationships, and then set forth the criteria that must be met as a predicate to extension of the bad-faith-breach cause of action to other areas:
 
 
 43
 (1) the contract must be such that the parties are in inherently unequal bargaining positions; (2) the motivation for entering the contract must be a nonprofit motivation, i.e., to secure peace of mind, security, future protection; (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party "whole"; (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.
 
 
 44
 Id. at 1118, 207 Cal.Rptr. at 129.
 
 
 45
 The Court concluded that "the characteristics of the insurance contract which give rise to an action sounding in tort are also present in most employer-employee relationships." Id. at 1116 n. 2, 207 Cal.Rptr. at 127 n. 2. See also Hudson v. Moore Business Forms, Inc., 609 F.Supp. 467, 478-79 (N.D.Cal.1985) (employer can be held liable in tort for breach of covenant of good faith and fair dealing implied in employment contracts).
 
 
 46
 We conclude that the Wallis criteria have been met sufficiently in this case to defeat a summary judgment motion: the two employees were clearly at an inherent disadvantage in bargaining with Fairchild; they were motivated by a desire to eliminate perceived inequalities in the workplace; ordinary contract damages would not provide an incentive to Fairchild to avoid breach and would not make the plaintiffs "whole"; and the employer-employee relationship here, while not of the longevity of the relationship in Wallis, involves the same vulnerability inherent in the insurance context.
 
 
 47
 We therefore conclude that Miller and Lewis should be permitted to proceed to trial on their claim of bad faith breach of the implied covenant.
 
 
 48
 III. Summary Judgment on the Emotional Distress Claims
 
 
 49
 A. Intentional Infliction of Emotional Distress
 
 
 50
 To establish a prima facie case for intentional infliction of emotional distress, a plaintiff must show: (1) outrageous conduct by the defendant; (2) an intention of causing or reckless disregard of the probability of causing emotional distress; (3) that the plaintiff has suffered severe or extreme emotional distress; and (4) actual and proximate causation of emotional distress by the defendant's outrageous conduct. Wallis, 160 Cal.App.3d at 1119-20, 207 Cal.Rptr. at 130; Agarwal v. Johnson, 25 Cal.3d 932, 946, 160 Cal.Rptr. 141, 149, 603 P.2d 58, 66 (1979); Fletcher v. Western National Life Insurance Co., 10 Cal.App.3d 376, 394, 89 Cal.Rptr. 78, 88 (1970).
 
 
 51
 Miller and Lewis contend that Fairchild's act of laying them off following settlement negotiations constituted outrageous conduct that was intended to cause injury, and that it in fact caused them to suffer emotional distress.
 
 
 52
 In Wallis, the court set forth the test for determining whether conduct is "outrageous":
 
 
 53
 "The modern rule [defining outrageous conduct] is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress. ... Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress."
 
 
 54
 Id., 160 Cal.App.3d at 1120, 207 Cal.Rptr. at 130 (quoting Newby v. Alto Riviera Apartments, 60 Cal.App.3d 288, 297, 131 Cal.Rptr. 547, 553 (1976) (citations omitted)).
 
 
 55
 The Wallis court held that an employer's termination of payments to a former employee without good reason, and then lying about its reasons could constitute an abuse of position, and therefore outrageous conduct. 160 Cal.App.3d at 1120, 207 Cal.Rptr. at 130. Similarly, Miller and Lewis have at least raised triable issues of fact regarding their allegedly retaliatory discharge by Fairchild. If Miller and Lewis could prove that they were laid off in retaliation for engaging in protected activities, or that Fairchild negotiated the settlement agreements in bad faith, under California law such an abuse of relation by an employer might be considered "outrageous."[5] See also Agarwal, 25 Cal.3d at 947, 160 Cal.Rptr. at 150, 603 P.2d at 67 (supervisor's racial insults, and his abuse of position to humiliate employee and secure termination for false reasons was outrageous); Alcorn v. Anbro Engineering, Inc., 2 Cal.3d 493, 498, 86 Cal.Rptr. 88, 90-91, 468 P.2d 216, 218-19 (1970) (shouting racial insults and then firing employee is outrageous conduct).
 
 
 56
 Miller and Lewis allege in their complaint that Fairchild intended to cause emotional distress. Fairchild has not met its burden under Fed.R.Civ.P. 56(c) of demonstrating an absence of a material factual issue regarding its intentions.
 
 
 57
 We also find that Miller and Lewis have made a sufficient showing of severe distress to go to trial on the emotional distress claim. "Severe" distress means "substantial, or enduring ... of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." Fletcher, 10 Cal.App.3d at 397, 89 Cal.Rptr. at 90. Such reactions as "fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry" satisfy this test. Id., 89 Cal.Rtpr. at 91. But see Crain v. Burroughs Corp., 560 F.Supp. 849, 853 (C.D. Cal.1983) (embarrassment, humiliation and lack of confidence not sufficiently extreme to state an emotional distress claim due to wrongful discharge under California law) (citing Ankeny v. Lockheed Missiles and Space Co., 88 Cal.App.3d 531, 536-37, 151 Cal.Rptr. 828, 831-32 (1979)).
 
 
 58
 Both Miller and Lewis stated that they experienced physical and emotional symptoms after their discharge, including depression, tension, worry, and physical problems. Fairchild disputes that the termination caused these symptoms. However, we think that the extent to which their claimed physical and emotional reactions are causally related to Fairchild's alleged unlawful conduct presents an issue for the trier of fact.
 
 
 59
 B. Negligent Infliction of Emotional Distress
 
 
 60
 In evaluating claims of negligent infliction of emotional distress, the California Supreme Court applies a test for reasonable foreseeability. The relevant inquiry is whether the risk of harm to the plaintiff from the negligent act of the defendant was reasonably foreseeable; if so, the defendant owes that plaintiff a duty to exercise due care. Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916, 923, 167 Cal.Rptr. 831, 834-35, 616 P.2d 813, 816-17 (1980). In instances in which such reasonable foreseeability exists, a defendant may state a cause of action for emotional distress even in the absence of proof of physical injury. Id. at 928-30, 167 Cal.Rptr. at 838-39, 616 P.2d at 820-21.
 
 
 61
 Under the standard adopted by the California Supreme Court, mental distress is found if a reasonable person would be unable to cope adequately with the mental stress under the circumstances of the case. Id. The Court noted that jurors could best make this determination by referring to their own experiences, and concluded that "[t]he screening of claims on this basis at the pleading stage is a usurpation of the jury's function." Id.
 
 
 62
 In their complaint, Miller and Lewis allege that they suffered emotional distress "as a result of the negligence and carelessness of the Defendant." Presumably, Miller and Lewis do not refer to Fairchild's asserted retaliatory discharge. Evidence that Fairchild intentionally retaliated against them would preclude an assertion that this same intentional action constituted negligence. However, Fairchild's act of negotiating settlement agreements and then laying them off prior to their enjoyment of benefits implied under the contract was arguably negligent, and could reasonably give rise to emotional distress. See id. at 930, 167 Cal.Rptr. at 839, 616 P.2d at 821 (defendant's negligent diagnosis that plaintiff's wife had syphilis stated a claim of negligent infliction of emotional distress). Cf. Quezada v. Hart, 67 Cal.App.3d 754, 761-621, 136 Cal.Rptr. 815, 819-20 (1977) (damages for emotional suffering allowed when tortfeasor's conduct, negligent as a matter of law, contains elements of intentional malfeasance or bad faith).
 
 
 63
 We conclude that in light of Molien, it was error to grant Fairchild's summary judgment motion with respect to this claim.
 
 IV. Summary Judgment on the Fraud Claim
 
 64
 Miller and Lewis claim that Fairchild committed fraud because the company failed to disclose during EEOC settlement negotiations its knowledge that Miller and Lewis were slated for termination.
 
 
 65
 Under California law, fraud may involve a variety of acts committed by a party to a contract with the intent to deceive or induce another party to enter into a contract. Fraudulent acts include the suppression of the truth by one having knowledge or belief, a promise made without any intention of performing it, or any other act intended to deceive. Cal. Civil Code Sec. 1572 (West 1982).
 
 
 66
 Miller and Lewis presented evidence that Ralph Bache, Fairchild's representative during the settlement negotiations, had heard rumors that further layoffs were imminent. The company had also admitted to the EEOC that at the time of negotiations, layoffs in Engineering were anticipated and that Lewis was a likely candidate for layoff.
 
 
 67
 We conclude that this evidence is sufficiently probative of Fairchild's intent to withstand a motion for summary judgment.
 
 V. Claims Not Addressed on Appeal
 
 68
 It is unclear whether Miller and Lewis also appeal the granting of summary judgment on several claims not argued on appeal. The Court of Appeals will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief, International Union of Bricklayers and Allied Craftsmen Local No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985), and therefore we decline to consider any of Miller's and Lewis's additional claims here.
 
 
 69
 The district court's judgment is REVERSED and REMANDED.
 
 
 
 [1]
 Although Fairchild relies on Cohen v. Fred Meyer, 686 F.2d at 797, for the proposition that proximity in time cannot by itself create an inference of retaliatory motivation, Cohen does not so hold. In that case, we simply reached the obvious conclusion that an employer who had already decided upon a course of action adverse to the plaintiff prior to learning of the plaintiff's protected activity did not intend to retaliate
 
 
 [2]
 Fairchild's stated procedure for layoff selection is as follows:
 When it is determined that economic circumstances warrant a layoff, the company's staffing needs are determined with regard to matters such as numbers of employes needed, positions to be filled and skills required for those positions. Functional assignments are then made. Those employees to whom the company does not assign a position are laid off.
 
 
 [3]
 Fairchild's evidence does indicate that individuals in other departments were laid off at the same time as Miller and Lewis, however
 
 
 [4]
 On appeal, Lewis and Miller also claim that Fairchild breached express terms of the settlement agreements, i.e., notification of the EEOC within 10 days of satisfaction of its promises and transferring Lewis to a different supervisor. Because Miller and Lewis failed to raise their claims in district court, we decline to consider them here. Villar v. Crowley Maritime Corp., 782 F.2d 1478, 1483 (9th Cir.1986)
 
 
 [5]
 This court has held that plaintiffs may not recover damages for emotional distress in a Title VII action. Shah v. Mt. Zion Hospital and Medical Center, 642 F.2d 268, 272 (9th Cir.1981). Although plaintiffs may not recover emotional distress damages under a Title VII claim, Title VII does not supplant independent state remedies. Thus, where the emotional distress claim arises in conjunction with the Title VII claim, damages may be awarded for harm that is distinct from the employment discrimination injury. Agarwal v. Johnson, 25 Cal.3d 932, 955, 160 Cal.Rptr. 141, 155, 603 P.2d 58, 72 (1979) (citing B. Schlei & P. Grossman, Employment Discrimination Law at 678 (1976))