David P. ADAM; Lanford Adami; James P. Calzia; Bela Csejtey Jr.; Alice S. Davis; James L. Drinkwater; Arthur B. Ford Arthur Grantz; Barry F. Hirshorn; H. Mahadeva Iyer, Chi–Yu King; Stephen L. Lewis; Allan G. Lindh; Dennis M. Mann; A. Thomas Ovenshine; Brent D. Turrin; Chester T. Wrucke, Plaintiffs–Appellants,

v.

Dirk KEMPTHORNE,* Secretary of the United States Department of the Interior, Defendant–Appellee.

David P. Adam; Lanford Adami; James P. Calzia; Bela Csejtey Jr.; Alice S. Davis; James L. Drinkwater; Arthur B. Ford Arthur Grantz; Barry F. Hirshorn; H. Mahadeva Iyer, Chi–Yu King; Stephen L. Lewis; Allan G. Lindh; Dennis M. Mann; A. Thomas Ovenshine; Brent D. Turrin; Chester T. Wrucke, Plaintiffs–Appellees,

v.

Dirk Kempthorne, Secretary of the United States Department of the Interior, Defendant–Appellant.

David P. Adam; Lanford Adami; James P. Calzia; Bela Csejtey Jr.; Alice S. Davis; James L. Drinkwater; Arthur B. Ford Arthur Grantz; Barry F. Hirshorn; H. Mahadeva Iyer, Chi–Yu King; Stephen L. Lewis; Allan G. Lindh; Dennis M. Mann; A. Thomas Ovenshine; Brent D. Turrin; Chester T. Wrucke, Plaintiffs–Appellees,

United States Department of the Interior, pursuant to Fed. R.App. P. 43(c)(2).

v.

Dirk Kempthorne, Secretary of the
United States Department of the
Interior, Defendant–Appellant.

David P. Adam; Lanford Adami; James
P. Calzia; Bela Csejtey Jr.; Alice S.
Davis; James L. Drinkwater; Arthur
B. Ford Arthur Grantz; Barry F.
Hirshorn; H. Mahadeva Iyer, Chi–Yu
King; Stephen L. Lewis; Allan G.
Lindh; Dennis M. Mann; A. Thomas
Ovenshine; Brent D. Turrin; Chester
T. Wrucke, Plaintiffs–Appellants,

v.

Dirk Kempthorne, Secretary of the
United States Department of the
Interior, Defendant–Appellee.

Nos. 04–17365, 04–17458,
05–16784, 05–16961.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 19, 2007.

Filed Sept. 9, 2008.

Reinhardt, Circuit Judge, filed opinion
concurring in part and dissenting in part.

649

Thomas W. Osborne, Esq., AARP–American Association of Retired Persons Foundation Litigation, Washington, DC, Mary M. Dryovage, Esq., Katharina Arnhold, Esq., Law Offices of Mary Dryovage, San Francisco, CA, for Plaintiffs–Appellants.

Steven J. Saltiel, Esq., USSF–Office of the U.S. Attorney, San Francisco, CA, for Defendant–Appellee.

Before: REINHARDT, RYMER, and THOMAS, Circuit Judges.

MEMORANDUM **

■ This appeal arises from an employment discrimination lawsuit brought against the Secretary of the United States Department of the Interior ("the Secretary"), by 16 former employees of the Geologic Division of the United States Geological Survey (collectively "the employees"). The employees appeal the district court's entry of summary judgment on CSRA and Title VII discrimination claims and the

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

district court's entry of judgment following a bench trial on ADEA and Title VII retaliation claims. The Secretary cross-appeals the district court's calculation of damages awarded to two employees for successful ADEA claims. We review the district court's findings of fact for clear error and legal conclusions de novo. *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 871 (9th Cir.2001). We affirm in part and remand in part. Because the parties are familiar with the factual and procedural history of this case, we need not recount it here.

## I

The district court did not err in granting judgment in favor of the Secretary on the employees' claims founded on the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633 et seq. The ADEA makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual [who is at least 40 years of age] ... because of such individual's age." 29 U.S.C. §§ 623(a), 631(a). The employees argue that the district court erred in entering judgment in favor of the Secretary on the employees' ADEA claims because the court (1) incorrectly applied the *McDonnell Douglas* analysis despite finding direct evidence that the reduction in force was motivated by age discrimination; (2) failed to apply a mixed-motive analysis; and (3) improperly evaluated statistical evidence regarding disparate impact.

### A

■ When a plaintiff puts forth circumstantial evidence of discrimination in an ADEA claim, courts employ the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir.2000). The *McDonnell Douglas* analysis contains three steps. First, an employee must establish a prima facie case of discrimination by demonstrating that "they were (1) members of the protected class (at least age 40); (2) performing their jobs satisfactorily; (3) discharged; and (4) replaced by substantially younger employees with equal or inferior qualifications." *Id.* Second, if the employee establishes a prima facie case, the burden shifts to the employer to articulate "legitimate, nondiscriminatory reasons for the adverse employment action." *Id.* at 1282. Third, if the employer presents such a reason, "the presumption of unlawful discrimination simply drops out of the picture" and the employee has the burden to show that the articulated reason was pretext and the employer thus intentionally discriminated because of the plaintiff's age. *Id.* (internal quotation marks omitted).

■ The employees argue that the district court erred in applying the *McDonnell Douglas* analysis because they presented direct, rather than circumstantial, evidence of discrimination. When a plaintiff presents *direct* evidence in support of an ADEA claim, the *McDonnell Douglas* analysis is unnecessary because the direct evidence allows the plaintiff to proceed directly to the question of whether the employer intentionally discriminated because of the plaintiff's age. *Enlow v. Salem–Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir.2004). *See also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Although the district court did apply the *McDonnell Douglas* analysis, we nonetheless affirm because the mode of analysis made no difference to the ultimate

question.[1] *See Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1097 (9th Cir. 2003) (summary judgment may be affirmed on any ground supported by the record). As a practical matter, there is no effect when, as here, a court first determines that the plaintiff has established a prima facie case and that the defendant has articulated a nondiscriminatory reason before proceeding to the question of whether the defendant's actions were intentionally discriminatory. In either case, the district court's judgment ultimately rests on a determination of "the sole remaining issue [of] discrimination *vel non*." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal quotation marks omitted). Because the district court did reach the question of whether the employees proved intentional discrimination, any error resulting from application of *McDonnell Douglas* was harmless.

### B

█ The employees next argue that the district court erred by not applying the mixed-motive analysis described by this Court in *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 853–54 (9th Cir.2002), *aff'd* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). The mixed-motive analysis is only applicable, however, when "a protected characteristic was 'a motivating factor' in the employment action." *Id.* Here, the district court found that "there is *no* evidence that the relevant decision makers were acting in accordance with an age-based discriminatory animus." (emphasis added). Because the district court's finding in this regard was not clearly erroneous, we need not determine whether a

mixed-motive analysis would have been proper had there been evidence that the relevant decision makers acted with any discriminatory animus.

### C

█ The employees additionally argue that the district court made several errors in evaluating the statistical evidence presented regarding disparate impact. First, the employees argue that the district court failed to resolve the conflicting testimony of the parties' respective statistical experts. District courts are required to make factual findings. *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1090 (9th Cir.2002). The findings must "be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." *Id.* (internal quotation marks omitted). The district court satisfied this requirement by rejecting the testimony of both statistical experts as inadequate.

█ Second, the employees argue that the district court committed clear error when it found that the employees' statistical evidence did not show a significant disparate impact on older employees. To establish a prima facie case of a disparate impact violation of the ADEA, an employee must: "(1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact." *Hemmings v. Tidyman's*

---

1. Because we affirm on the basis of harmless error, we need not determine whether the evidence cited by plaintiffs can properly be considered "direct evidence." *See Enlow,* 389 F.3d at 812 (defining direct evidence as

"evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude." (internal quotations omitted)).

*Inc.,* 285 F.3d 1174, 1190 (9th Cir.2002). The district court held that the employees had not established a prima facie case of a disparate impact because they failed to isolate and identify the specific employment practice responsible for the disparate impact. We have held that a reduction in force may constitute a specific employment practice. *Pottenger v. Potlatch Corp.,* 329 F.3d 740, 749 (9th Cir.2003). However, analyzing the impact of a "generalized policy" is not specific enough. *Smith v. City of Jackson,* 544 U.S. 228, 241, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005). The district court found that the reduction in force could be broken down into different elements and that statistical analysis of the reduction in force as a whole was thus insufficient to meet the employees' burden. This factual finding is not clearly erroneous.[2]

Third, the employees contend that the district court erred by failing to explain why it did not find that the statistical evidence demonstrated disparate treatment on the basis of age. The district court found that the employees' statistical analysis failed to provide any meaningful evidence because it did not take into account the type of work performed by each employee. Mindful that we have been skeptical of statistical analyses that "fail to account for other relevant variables," *Pottenger,* 329 F.3d at 748, we see no reversible error in the district court's conclusion.

### D

In sum, the district court did not err in granting judgment in favor of the Secretary on the employees' ADEA claims.

### II

The district court did not err in granting judgment on the employees' claims based on the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7703. In an appeal from a decision of the Merit Systems Protection Board to a district court, the district court must review CSRA claims under the deferential standard described in 5 U.S.C. § 7703(c) and must review discrimination claims de novo. *Washington v. Garrett,* 10 F.3d 1421, 1428 (9th Cir.1993). The employees argue that the district court improperly applied deferential review to their discrimination claims. We disagree. The district court properly applied deferential review to the employees' CSRA claims and granted summary judgment in favor of the Secretary on those claims—a judgment that the employees do not appeal. The district court declined, however, to grant summary judgment with respect to the employees' discrimination claims and proceeded to hold a full bench trial in which it considered those claims de novo. Indeed, in its summary judgment order, the district court stated:

> [T]he Court may properly consider Plaintiffs' claims of other wrongs based on the administrative record separately from Plaintiffs' discrimination claims, which the Court will review *de novo.* Thus, in this order, the Court will not consider any of Plaintiffs' discrimination claims ... and will rule only on Defendant's motion for summary judgment re-

---

**2.** In analyzing the disparate impact claim, the district court recited the "business necessity" test. The Supreme Court recently noted that "the business necessity test should have no place in ADEA disparate-impact cases." *Meacham v. Knolls Atomic Power Lab.,* — U.S. ——, 128 S.Ct. 2395, 2404, 171 L.Ed.2d 283 (2008). However, prior to considering the applicability of the "business necessity" test, the district court held that the employees failed to establish a prima facie case. Because we affirm on this ground, any error the district court made in applying the "business necessity" test to a disparate impact claim is harmless.

garding whether the Division instituted the RIF and separated Plaintiffs in accordance with the CSRA.

Thus, the district court properly separated the CSRA claims from the discrimination claims and properly reviewed the discrimination claims de novo. There is no basis for reversing the district court's judgment on the CSRA claims.

## III

The district court properly granted judgment on the claims of Drs. Iyer and King that the Secretary violated their rights under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq. The district court granted summary judgment on all of the Title VII except retaliation and granted judgment on the retaliation claims after a bench trial.

### A

Title VII provides that "[i]t shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In claims alleging employment discrimination, the *McDonnell Douglas* burden-shifting analysis generally applies, unless the employee has put forth direct evidence. *Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1559 (9th Cir.1994). Here the district court found that although Drs. Iyer and King established a prima facie case, they did not put forth any additional evidence to suggest that the Secretary's nondiscriminatory explanation for their separation was pretext. The record supports the district court's conclusion.

### B

 Title VII also "prohibits an employer from retaliating against an applicant for employment because the applicant has opposed any unlawful employment practice." *Lam*, 40 F.3d at 1558. Retaliation claims are decided under the familiar *McDonnell Douglas* framework. *Id.* at 1559 n. 11. To establish a prima facie case of discriminatory retaliation, a plaintiff must show: (1) that plaintiff engaged in activity protected by Title VII; (2) an adverse employment action; (3) a causal link between the protected activity and the adverse action. *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 731 (9th Cir.1986). The district court found that although Drs. Iyer and King met the first two requirements, they failed to show a causal link between their protected activity and their termination. We review this factual finding under the highly deferential clear error standard. *Miller v. Fairchild Indus. Inc.*, 885 F.2d 498, 503 (9th Cir.1989). Applying this standard to the record, we see no clear error in the district court's findings.

## IV

 The Secretary cross-appeals the district court's calculation of damages awarded to plaintiffs Calzia and Wrucke. We review a district court's computation of damages for clear error. *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837, 843 (9th Cir.2004).

### A

The Secretary argues that the district court erred in calculating Calzia's damages by presuming that he would have been promoted to a higher pay grade had he not been laid off on account of his age. The district court based its calculation of Calzia's damages on expert testimony that Calzia would likely have been promoted from GS–12, Step 10, to GS–13, Step 4, in 2001 because his supervisors had recommended him for that promotion. Although

the Secretary argues that promotions to a higher grade are not automatic and Calzia would not necessarily have been promoted, despite his supervisors' recommendation, the district court's decision to adopt the expert's calculations as the most reasonable measure of damages was not clearly erroneous.

 However, in adopting the expert's calculations, the district court appears to have inserted a typographical error in the final figure, thereby increasing the award from $170,522, as calculated by the employees' expert, to $171,522. We thus remand for the sole purpose of allowing the district court to reconsider whether the judgment should be amended to correct the apparent clerical error.

### B

The Secretary argues that the district court erred in calculating Wrucke's damages because the court failed to accurately determine the salary Wrucke would have earned had he chosen to be reassigned to a lower pay grade. The district court found that Wrucke failed to mitigate his damages when he declined to "bump" into a GS–13 position offered to him. Had Wrucke agreed to the bump to GS–13, he would have remained in his prior grade (GS–14, Step 10) for two years, after which he would have assumed "pay retention" status. Under "pay retention," Wrucke would have retained the pay of a GS–14 position, as long as it did not exceed 150% of the top step of his bumped position, and would have received 50% of the cost of living increases for the grade of his current position. The Secretary argues that this 50% limitation applies only to the "rate of basic pay," 5 C.F.R. § 536.205(c), defined as "exclusive of additional pay of any kind," 5 C.F.R. § 536.102, and that the locality pay increase would thus not have been reduced by 50%. However, the regu-

lations cited by the Secretary are no longer current, and regulations effective May 1, 2005, indicate that locality pay is now treated as the rate of basic pay for purposes of pay retention; the 50% limitation now applies to increases in both regular pay and locality pay. *See* 5 C.F.R. § 531.610. Thus, the district court correctly calculated the amount Wrucke would have earned had he mitigated his damages.

### V

We affirm the judgments of the district court, with the exception of the district court's calculation of Calzia's damages which is remanded for the sole purpose to allow the district court to enter a corrected judgment, if the district court finds it appropriate. Given our resolution of the issues on appeal, we need not—and do not—reach any other argument raised by the parties.

**AFFIRMED; REMANDED.**

REINHARDT, Circuit Judge, concurring in part and dissenting in part.

At a speech delivered shortly before the round of firings that led to the present case, Dr. Gordon Eaton, the Director of the United States Geological Survey ("USGS"), asked his audience: "What is the difference between Jurassic Park and the Geological Division of the Geologic Survey?" The answer: "One is an amusement park filled with dinosaurs and the other is a movie." A poster announcing an employee meeting to discuss the workforce reduction contained the following cartoon caption: "You gotta help me, Mom ... This assignment is due tomorrow, and Gramps doesn't understand the new tricks." These 'jokes' by no means reflect the isolated humor of individual USGS employees. Rather, a 1993 official report set-

ting forth the agency's "Vision for the 21 st Century" explained that "[s]ome segments of the USGS currently are suffering from an aging, high-grade workforce" and that this is "a critical problem that must be addressed...."

On this record, I cannot agree with the majority's acquiescence in the district court's finding that "there is *no* evidence that the relevant decision makers were acting in accordance with age-based discriminatory animus." (emphasis added). I would hold that where there is irrefutable evidence of an officially sponsored culture of discrimination in a workplace, it is not necessary to demonstrate that the individual who ultimately undertook the challenged adverse employment action was motivated to do so by his own discriminatory animus. *See, e.g., Galdamez v. Potter,* 415 F.3d 1015, 1026 n. 9 (9th Cir.2005) (explaining that discrimination occurs "where the ultimate decision-maker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another decision-maker's discriminatory animus"). Because the record in this case contains ample evidence of an officially sponsored culture of age-based discrimination at USGS, I would reach the merits of the employees' mixed-motive claim and find discrimination in violation of the ADEA. Accordingly, although I concur in the majority disposition in most respects, I respectfully dissent from Part I.B.