**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE ALFREDO RODRIGUEZ-JIMENEZ,
*Petitioner*,

v.

MERRICK B. GARLAND, Attorney
General,
*Respondent.*

No. 21-70064

Agency No.
A204-822-401

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted November 16, 2021[*]
Phoenix, Arizona

Filed December 21, 2021

Before:  Ronald Lee Gilman,[**] Daniel A. Bress, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge VanDyke

---

[*] The parties jointly moved to submit this case on the briefs without oral argument, which was granted.

[**] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

**SUMMARY**[***]

### Immigration

Denying Jose Alfredo Rodriguez-Jimenez's petition for review of a decision of the Board of Immigration Appeals, the panel held that (1) the Board and the Immigration Judge (collectively, agency) sufficiently considered Rodriguez-Jimenez's claim for deferral of removal under the Convention Against Torture and provided an adequate rationale for rejecting that claim; and (2) because substantial evidence supported the denial of CAT protection, Rodriguez-Jimenez failed to establish that any alleged due process violation caused him prejudice.

Rodriguez-Jimenez claimed that the Board did not sufficiently consider the evidence relevant to his claim of future torture. Reviewing both the BIA's and IJ's decisions, the panel concluded that the record demonstrated that the agency considered the relevant evidence and announced its decisions in terms sufficient to enable a reviewing court to perceive that the agency had heard and thought and not merely reacted to Rodriguez-Jimenez's claims. The panel wrote that this is all that is required; the agency need not provide a detailed explanation of every argument or piece of evidence in its decision.

Rodriguez-Jimenez next argued that the Board violated his right to due process by not providing him an opportunity to provide additional corroborating evidence or explain his testimonial inconsistencies. The panel concluded that this

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

claim failed for lack of prejudice because substantial evidence supported the Board's rejection of his CAT claim, irrespective of any testimonial inconsistencies. The panel explained that although Rodriguez-Jimenez argued that some local police have acquiesced to threats of narco-trafficking violence, he failed to provide any evidence beyond his own personal speculation that he would face such acquiescence—particularly since he did not dispute that the police responded to the incidents that form the basis of his claim for relief.

**COUNSEL**

Michael Franquinha, Aguirre Law Group LLP, Mesa, Arizona, for Petitioner.

Brian Boynton, Acting Assistant Attorney General; John S. Hogan, Assistant Director; Rebecca Hoffberg Phillips, Trial Attorney; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

VANDYKE, Circuit Judge:

In this case, Jose Alfredo Rodriguez-Jimenez claims that the Board of Immigration Appeals (BIA) (1) did not sufficiently consider the evidence relevant to his claim of future torture, and (2) denied him due process by not providing him an opportunity to explain his testimonial inconsistencies. But the record shows that the BIA and the Immigration Judge (collectively, the agency) considered the relevant evidence and "announce[d] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted" to Rodriguez-Jimenez's claims. *Najmabadi v. Holder*, 597 F.3d 983, 990 (9th Cir. 2010) (citation omitted). This is all that is required; the agency need not provide a detailed explanation of every argument or piece of evidence in its decision. And Rodriguez-Jimenez's due process claim fails for lack of prejudice because substantial evidence supports the BIA's rejection of his CAT claim, irrespective of any testimonial inconsistencies. We therefore deny Rodriguez-Jimenez's petition.

## BACKGROUND

### I. Removal Proceedings

In February 2015, Rodriguez-Jimenez pled guilty to unlawful flight/eluding police and driving under the influence. A month later, the Department of Homeland Security (DHS) commenced removal proceedings. In the midst of his removal proceedings, Rodriguez-Jimenez pled guilty to two other criminal offenses: solicitation to commit forgery and possession of drug paraphernalia. Because of his criminal history, Rodriguez-Jimenez's sole basis for

relief raised before the agency was deferral of removal under the Convention Against Torture (CAT).

In his application, Rodriguez-Jimenez expressed concern about returning to Mexico, and specifically his hometown of Altar, Sonora, because of problems that his cousin's family experienced in 2012. He wrote that "my cousin Mario Rodriguez . . . . informed me that ["hit men" for the cartel, or "sicarios"] had . . . . in January of 2012 . . . entered [Mario's] home and pointed their guns at his wife . . . and their children demanding from them that they turn my cousin over to them." Rodriguez-Jimenez wrote that Mario was not home at the time, and that his family left for the United States shortly thereafter—and again noted that the incident occurred in 2012. Rodriguez-Jimenez also wrote that another relative was kidnapped, and that the body was found cut up in pieces.

Rodriguez-Jimenez later testified before the Immigration Judge (IJ) in November of 2018. He began by swearing that all the information in his application was true and correct to the best of his knowledge. During his testimony, Rodriguez-Jimenez stated that some of his aunts, uncles, and cousins still lived in Altar, Sonora—the same place where the sicarios harassed Mario's family. Rodriguez-Jimenez didn't claim that the sicarios had harassed any other family members still living in Altar.

He then relayed his story about Mario's encounter with the sicarios. But he said he had forgotten Mario's last name and the names of most of Mario's three children, even though he had seen them in the past six months. He guessed that Mario's oldest child was about eight years old. Rodriguez-Jimenez also conceded that he knew of Mario's incident with the sicarios only indirectly through family members, and not through Mario himself—contrary to what

he previously stated in his application. To clarify that Rodriguez-Jimenez lacked any direct knowledge of the incident upon which he predicated his claim for relief, the IJ asked Rodriguez-Jimenez to confirm his lack of direct knowledge at least six times—which Rodriguez-Jimenez did, each time he was asked. When asked why Mario, as one of the persons who the sicarios harassed, was not present to testify about the incident, Rodriguez-Jimenez claimed that he didn't know. But he guessed that Mario was scared, since Rodriguez-Jimenez had earlier conceded that Mario resided in the United States illegally. The IJ concluded, "[s]o, all you know is what somebody told you that they heard from somebody else." Rodriguez-Jimenez agreed. "This is hearsay on top of hearsay," the IJ observed.

Rodriguez-Jimenez further conceded that he had never encountered the sicarios personally, that no Mexican government official had ever threatened him, that he had never been tortured, and that he had not returned to Mexico in over twenty years. Even Rodriguez-Jimenez's counsel ultimately conceded that Rodriguez-Jimenez "only has secondhand information from his mother." The IJ asked if there was anything else, and Rodriguez-Jimenez's counsel responded in the negative.

Rodriguez-Jimenez's mother then testified. She stated that she, her husband, and Rodriguez-Jimenez left Mexico in 1995 "[b]ecause there was no work, and [they] decided to seek a better future for [Rodriguez-Jimenez]." Regarding the sicario's attempt to recruit Mario, she testified that it took place approximately 10 years ago, and that she knew of it only through Mario's wife. That meant the incident occurred around 2008—four years earlier than when Rodriguez-Jimenez, in his application, said it happened. She also testified that the police took a report, but that she wasn't

aware if Mario's family identified the sicarios.  A week after Mario's family filed the report, they left Mexico.

Rodriguez-Jimenez's mother further noted that Mario and his family now live in the United States, and that since the incident, none of them has had any contact with the sicarios.  She also stated that Mario's oldest child was approximately 11 or 12.  When the IJ pointed out that Rodriguez-Jimenez had testified that Mario's oldest child was approximately 8, his mother stated that she wasn't sure of his age.

Finally, Rodriguez-Jimenez's mother relayed how the sicarios targeted another relative, who went missing shortly thereafter.  She conceded that the police both investigated the incident and told the family that they would inform them of any developments in the investigation.  She also explained that a body was eventually found, but that it couldn't be identified as the missing relative's—again, in contrast to Rodriguez-Jimenez's statements in his application, where he wrote that the missing relative's body was found.  She concluded her testimony by reiterating her fear that Rodriguez-Jimenez would be the victim of a crime "[b]ecause [of] the things happening . . . within the family, and they want young men."

At the conclusion of the hearing, Rodriguez-Jimenez's counsel directed the IJ to country reports submitted in support of Rodriguez-Jimenez's application, arguing that the sicarios' harassment of young men occurs throughout Mexico and that local police would commonly acquiesce to drug-related violence.  Upon the IJ's request, Rodriguez-Jimenez's counsel also pointed the IJ to certain page numbers of the country reports and proceeded to read a direct quote from that report.  The government countered that Rodriguez-Jimenez's cited country report "is still too vague.

It's not specific enough.  It's . . . [Rodriguez-Jimenez]'s burden to show that the Government would . . . acquiescence to torture in his case, specifically in his case.  And frankly, the facts just have not shown that."

## II.  Agency Determinations

In assessing Rodriguez-Jimenez's application and testimony, the IJ first acknowledged the numerous documents in the record, including the country conditions reports that Rodriguez-Jimenez submitted.  The IJ then discussed various inconsistencies between Rodriguez-Jimenez's application and his and his mother's later testimony—including whether Rodriguez-Jimenez heard about the incident with Mario and the sicarios directly or through others, and whether it occurred in 2008 or 2012.  The IJ also discussed Rodriguez-Jimenez's mother's testimony and declaration, noting that even the mother's testimony provided conflicting evidence as to when the incident with the sicarios occurred.  The IJ further observed that Rodriguez-Jimenez failed to provide any evidence corroborating the incident.

Regarding government acquiescence in any possible future torture, the IJ concluded that Rodriguez-Jimenez's country conditions evidence was too speculative.  The IJ found that "there is insufficient evidence in the record to establish that if [Rodriguez-Jimenez], who is 24 years old and has lived practically his entire life in the United States, would go back to Mexico, that he would be known to any criminals."  "In fact, the majority of the information presented today indicates that the criminals in Mexico primarily look for young men to help them with their illegal activities.  That would put the entire population of men in Mexico between the ages of 15 and 25 in danger . . . ."  The IJ therefore concluded that Rodriguez-Jimenez failed to

meet his burden of establishing it was more likely than not that he would be tortured with the acquiescence of Mexican authorities, and denied his request for deferral of removal under CAT.

Rodriguez-Jimenez appealed to the BIA, and the BIA dismissed his appeal. It first concluded that "[i]nsofar as the [IJ] denied [Rodriguez-Jimenez]'s claim based upon a negative credibility finding and lack of corroboration, the decision cannot be affirmed." It reasoned that the IJ did not provide Rodriguez-Jimenez with notice and opportunity to respond to perceived discrepancies and deficiencies in his corroborating evidence.

But the BIA upheld the IJ's denial of deferral of removal under CAT on the IJ's "alternate grounds." Citing specific portions of the IJ's decision, the BIA noted that Rodriguez-Jimenez had no involvement with the cartel or its associates, that Rodriguez-Jimenez was not claiming past torture, and that the evidence he provided in support of future torture was inconsistent and lacked corroboration. The BIA further reasoned that Rodriguez-Jimenez's claim ultimately rested on speculation, which was insufficient to establish CAT relief. It therefore concluded that the IJ's rejection of the CAT claim was "not clearly erroneous." Rodriguez-Jimenez now petitions for review of the agency's decision.[1]

---

[1] The BIA also denied Rodriguez-Jimenez's motion to remand for consideration of voluntarily departure. But Rodriguez-Jimenez does not challenge the BIA's denial of that motion in his petition and has therefore waived that claim. *See Brown v. Rawson-Neal Psychiatric Hosp.*, 840 F.3d 1146, 1148–49 (9th Cir. 2016).

## STANDARD OF REVIEW

"Where, as here, the BIA reviewed the IJ's . . . decision for clear error and relied upon the IJ's opinion as a statement of reasons but did not merely provide a boilerplate opinion, we look to the IJ's oral decision as a guide to what lay behind the BIA's conclusion." *Lai v. Holder*, 773 F.3d 966, 970 (9th Cir. 2014) (citation and internal quotation marks omitted).[2] "In so doing, we review . . . the reasons explicitly identified by the BIA, and then examine the reasoning articulated in the IJ's oral decision in support of those reasons." *Id.* "Thus, we refer to the Board and IJ collectively as 'the agency.'" *Medina-Lara v. Holder*, 771 F.3d 1106, 1111 (9th Cir. 2014).

We review the agency's factual determinations for substantial evidence, which "requires . . . uphold[ing] the [agency]'s determination unless the evidence compels a contrary conclusion." *Sura v. Garland*, 8 F.4th 1161, 1167 (9th Cir. 2021) (citation and internal quotation marks omitted). "Due process claims are reviewed *de novo*." *Mukulumbutu v. Barr*, 977 F.3d 924, 925 (9th Cir. 2020).

---

[2] Similarly, we have also held that "[w]here, as here, the BIA has reviewed the IJ's decision and incorporated portions of it as its own, we treat the incorporated parts of the IJ's decision as the BIA's." *Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002); *see also Garcia-Martinez v. Sessions*, 886 F.3d 1291, 1293 (9th Cir. 2018) ("Where, as here, the BIA agrees with the IJ's reasoning, we review both decisions.").

**DISCUSSION**

I.  **The Agency Sufficiently Considered the Relevant Record Evidence.**

Relying heavily on *Aguilar-Ramos v. Holder*, 594 F.3d 701, 705 (9th Cir. 2010), Rodriguez-Jimenez first argues that the agency erred by not "address[ing] in detail all evidence of [the] record relevant to [his] claim"—particularly, his mother's testimony and evidence of country conditions. But unlike in *Aguilar-Ramos*, the agency here considered this evidence. *See Andrade v. Lynch*, 798 F.3d 1242, 1245 (9th Cir. 2015) (per curiam) ("The BIA's consideration of the Country Report and other materials distinguishes the *Aguilar-Ramos* line of authority, applicable to cases where it did not give consideration to submitted materials."); *Aguilar-Ramos*, 594 F.3d at 705 (finding error where "neither the IJ nor the BIA considered the Country Report in denying Aguilar relief under CAT").

The agency's consideration of the relevant record evidence becomes clear when reviewing both the BIA's and the IJ's decisions. *See Lai*, 773 F.3d at 970. In affirming the IJ on clear-error review, the BIA explained that the "evidence [Rodriguez-Jimenez] provided"—which in context necessarily included his mother's testimony—was inconsistent and lacking in corroboration, and that Rodriguez-Jimenez's "claim ultimately rests on mere speculation." The BIA's referenced analysis of the "evidence . . . provided" reveals that it did, in fact, consider Rodriguez-Jimenez's mother's testimony. *Cf. Larita-Martinez v. INS*, 220 F.3d 1092, 1096 (9th Cir. 2000) ("[E]ven though the [BIA] did not explicitly mention the supplemental evidence, it plainly stated that it reviewed the record of proceedings. . . . [W]hen [it] stated that it reviewed the record of proceedings, it explicitly meant that it reviewed

the documents submitted in support of [the petitioner's] appeal . . . ." (internal quotation marks and alterations omitted)). Indeed, earlier in its decision the BIA expressly noted that "[c]orroborating testimony was presented by [Rodriguez-Jimenez's] mother."

The BIA also expressly cited the parts of the IJ's decision where the IJ explicitly discussed evidence of country conditions and the mother's testimony, further evincing the agency's consideration of relevant record evidence. *See Lai*, 773 F.3d at 970. In those portions cited by the BIA, the IJ rejected Rodriguez-Jimenez's torture-with-government-acquiescence argument—where Rodriguez-Jimenez relied on country reports—as overly speculative, given the lack of evidence to establish that Rodriguez-Jimenez, who has lived most of his life in the United States, would be known and targeted by criminals in Mexico upon his return. The IJ also concluded that his mother's testimony undermined Rodriguez-Jimenez's claim that the sicarios killed another relative since the body was never identified. Considering the BIA's and IJ's decision together, as we must, the agency did not fail to consider the relevant record evidence, including country reports. *Aguilar-Ramos* is thus not applicable.

Accepting that the agency considered the relevant record evidence, the question becomes whether the agency provided a sufficiently thorough and reasoned analysis in support of its decision. But we have previously declined to engage in the sort of exacting review that Rodriguez-Jimenez now invites. Instead, we have held that "the BIA does not have to write an exegesis on every contention. What is required is merely that it consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Najmabadi*, 597 F.3d at 990 (citation

and internal alterations omitted).   A requirement that the agency's decision reflect that it "heard and thought" about an issue, and "not merely reacted," is not a high bar.  *See id.* And this deferential standard of review makes sense: in assessing the substance of the agency's decision, we cannot reweigh the evidence, but instead are limited to determining whether the evidence compels a contrary conclusion.  *See Singh v. INS*, 134 F.3d 962, 969 n.14 (9th Cir. 1998).  Given the agency's express recognition and discussion of materials in the record, "[t]he Board's decisions and adoptions of IJ rulings adequately convey the reasoning behind the denial of the CAT claim." *Efe v. Ashcroft*, 293 F.3d 899, 908 (5th Cir. 2002).

Ultimately, Rodriguez-Jimenez's argument essentially amounts to a disagreement with the agency's analysis.  But we cannot overturn the agency's decision based on mere disagreement.  *Aruta v. INS*, 80 F.3d 1389, 1393 (9th Cir. 1996) ("[W]e do not reverse the BIA simply because we disagree with its evaluation of the facts, but only if we conclude that the BIA's evaluation is not supported by substantial evidence." (citation and internal quotation marks omitted)).  Substantial evidence supports the agency's denial of CAT relief, and Rodriguez-Jimenez's argument that the agency provided insufficient reasoning fails.

## II.  Rodriguez-Jimenez Received Due Process.

Rodriguez-Jimenez next argues that the BIA violated his right to due process by (1) not remanding to the IJ so that Rodriguez-Jimenez could explain the inconsistencies between his application and testimony, and (2) erroneously relying on those inconsistences and lack of corroboration in denying him CAT relief, even though the BIA determined that the IJ erred by failing to provide Rodriguez-Jimenez with notice and opportunity to remedy those inconsistencies

and lack of corroboration. "To prevail on a due process challenge to deportation proceedings, [an alien] must show error *and* substantial prejudice. A showing of prejudice is essentially a demonstration that the alleged violation affected the outcome of the proceedings; we will not simply presume prejudice." *Larita-Martinez*, 220 F.3d at 1095 (emphasis added and citation omitted).

Rodriguez-Jimenez's due process argument fails because he does not show how any alleged error prejudiced him. Nor does any prejudice exist, because the record does not compel the conclusion that Rodriguez-Jimenez demonstrated a greater than 50% chance of torture with the acquiescence of the Mexican government, irrespective of any testimonial inconsistencies or lack of corroboration. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 363 (9th Cir. 2017) ("The alien must prove not only that torture will more likely than not occur, but also that there is sufficient state action involved in the torture."). Rodriguez-Jimenez's mother conceded that the police responded and investigated the alleged incidents with the sicarios. Rodriguez-Jimenez appears impliedly to argue government acquiescence by noting that Mexican police officers are "eager to serve" and are "developing professionally," but lack adequate resources. But simply because law enforcement lacks resources and are still developing professionally does not mean that they are condoning or acquiescing in crimes that they are making efforts to combat. Moreover, the country-conditions evidence provided by Rodriguez-Jimenez shows that the Mexican government is continuing to take steps against crime: a 2017 Human Rights report discusses the Mexican President signing legislation combating forced disappearances, and the creation of specialized attorney general's offices at the state level for disappeared persons. And a U.S. State Department Report notes that "[o]verall,

the number of kidnapping in . . . Sonora is very small compared to other cities in Mexico." It further notes that "in 2015, Sonora began a major change to its criminal justice system" whereby it was switching to a more adversarial-based system (instead of mere written correspondence) which "should streamline the Mexican judicial/criminal justice system."

Although Rodriguez-Jimenez did argue that some local police have acquiesced to threats of narco-trafficking violence, he failed to provide any evidence beyond his own personal speculation that he would face such acquiescence—particularly since he does not dispute that the police responded to the incidents that form the basis of his claim for relief. *See Zheng v. Holder*, 644 F.3d 829, 835–36 (9th Cir. 2011) (determining that speculative claims of torture do not compel a reversal of the agency). Rodriguez-Jimenez's failure to establish government acquiescence negates any potential for CAT relief, irrespective of his testimonial inconsistencies or lack of corroboration. *See Sura*, 8 F.4th at 1170 (determining that a petitioner's "fail[ure] to establish that any torture he may face would be caused by or with the consent or acquiescence of the . . . government . . . . is enough to deny deferral of removal"). Instead, Rodriguez-Jimenez's alleged fear of harm amounts to a fear of generalized violence from the sicarios targeting young men in Mexico, which cannot justify CAT relief. *See Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (per curiam) ("Petitioners' generalized evidence of violence and crime in Mexico is not particular to Petitioners and is insufficient to meet [the more likely-than-not] standard" for CAT relief). Because Rodriguez-Jimenez does not establish any prejudice from the alleged BIA errors, his due process claim fails.

**CONCLUSION**

The agency sufficiently considered Rodriguez-Jimenez's claim and provided an adequate rationale for its rejection of that claim. Rodriguez-Jimenez also received due process. We therefore deny the petition.